GEORGE CORNELIUS *vs.* DEN, ex dem. THOMAS W. IVINS et al.

1. Where land is conveyed to be used for a specific purpose, and the grantor reserves the right to a partial use of it, the reservation will be good, if it is not inconsistent with, or repugnant to the purposes for which the land is conveyed.

2. If land is conveyed for a particular purpose not inconsistent with, or repugnant to the nature of the estate granted, and the deed contain a condition that, if the grantee fail to use it for the purposes specified in the deed, he shall forfeit his estate therein, and the land shall revert to the grantor, his heirs and assigns, the condition is valid, and a violation of it will work a forfeiture of the estate.

3. Where it is clear upon the face of a deed that stipulations contained in it are conditions, and not covenants, there is no room for the rules of interpretation to decide whether the clauses of the deed operate as covenants or conditions. Rules of construction can only apply in cases of doubt or of the interference of legal principles with the plain import of language.

4. By the act of March 14th, 1851, a right of entry for condition broken is made devisable by will executed after the act went into operation.

5. In case of the forfeiture of an estate upon condition, an actual entry upon the land is not necessary in order to maintain an action of ejectment. The right to enter—not an actual entry—is requisite to sustain an action.

Cornelius v. Ivins.

In error to the Ocean Circuit Court.

An action of ejectment was brought in the court below to recover possession of a tract of land in the county of Ocean.

The lessors of the plaintiff claimed title under the will of Anthony Ivins, and the defendant claimed under a deed from said Ivins, and Sarah, his wife. The deed conveyed a lot of land on Toms river, and also a strip of land, thirty feet wide, extending across the grantor's land, from Toms river to land of the Monmouth Purchase Company, to be used for the purposes of a rail or tramway. The deed contained the following reservations and conditions :

"Saving and reserving and excepting out of the same to the said party of the first part, their heirs and assigns forever, the full, free, and uninterrupted right and privilege of way or passage, to travel, pass, and re-pass, with their teams, horses, and carriages, upon either side of the said rail or tramway to be constructed by the said party of the second part upon the premises hereby granted, when and as often as they may please or see fit, and avoiding and abstaining from traveling on or over the said rail or tramway, excepting for the purpose of crossing the same when and where necessary or convenient, and doing no unnecessary or unavoidable injury or damage to the said rail or tramway in so doing ; and further saving, reserving, and excepting out of the same to the said party of the first part, their heirs and assigns forever, the right and privilege of leading, conducting, and conveying under the said rail or tramway so to be constructed, and through any part of the premises hereby granted, any water or water-courses now existing or hereafter to be created by the said party of the first part, or which hereafter may be created, or arise, or be formed, upon the lands of the said party of the first part contiguous or adjacent, or supply of any water-works or any other works to be put in operation by water-power, which the said party of the first part, their heirs or assigns, have erected, or at any time here-

Cornelius v. Ivins.

after may erect or cause to be erected, on lands now owned or may hereafter be owned by them, to be done by the said party of the first part, their heirs or assigns, at their own proper costs and charges, doing no unnecessary injury or damage to the said rail or tramway; and also saving, reserving, and excepting to the said party of the first part, their heirs and assigns forever, out of the premises hereby granted, the right and privilege of raising and keeping up such head of water as they may judge necessary or proper for erecting and making such water-power, and using such water-power in the manner which they may judge most advantageous and useful, doing no unnecessary or wanton damage or injury to the said rail or tramway, and also saving, reserving, and excepting to the said party of the first part, their heirs and assigns forever, out of the said premises hereby granted, the enclosure, right, and privilege to demand, receive, sue for and recover, for anything hereafter, or the premises aforesaid, from all persons whatsoever and whosoever, who shall not be in the immediate and proper employ of the said parties of the second part, their heirs or assigns, or sailing or navigating their vessels or boats, who shall come on or land on the wharf or wharves to be erected by the said party of the second part, or in front of the premises where it strikes Toms river at low water mark, hereby granted, such proper, just, and reasonable wharfage, landage, or docking, or compensation for coming so at said wharf or landing, or otherwise using the same, or to compound, license, or agree for the same, in such manner as they, the said party of the first part, may see proper; and also to load or unload any vessel or boat belonging to or in the employ of the said party of the first part, their heirs and assigns, whenever the said party of the second part, their heirs or assigns, are not using the same, the said party of the first part always using and exercising the right and privilege hereby saved, reserved, and excepted in such manner as not to interfere with, molest, interrupt,

or disturb the said party of the second part, their heirs or assigns, or the vessels or boats belonging to or employed by them, or the persons employed or engaged in navigating the same, in the full, just, and beneficial use and occupation of the wharf or wharves in a reasonable and proper manner, it being hereby declared and expressly understood that the said party of the second part, their heirs and assigns, are entitled to the prior use, occupation, and enjoyment of the said dock or wharf or wharves, and that the said party of the first part, their heirs and assigns, are to use the right and privilege hereby reserved and excepted in subordination thereto, and so as not to molest, interfere with, or disturb the said party of the second part, their heirs or assigns, in the use or enjoyment of the said wharf, or to their damage, annoyance, or injury, and only at times when they are not using the same; together with all and singular the hereditaments and appurtenances to the same belonging or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues, and profits thereof, and also all the estate, right, title, interest, property, claim, and demand whatsoever, in law or equity, of the said party of the first part of, in, or to the same, and every part and parcel thereof, except as before mentioned, with the appurtenances; to have and to hold the above-granted and bargained premises, with the appurtenances, saving, reserving, and excepting, as aforesaid, unto the said party of the second part, their heirs and assigns forever, (as tenants in common, and not as joint tenants,) in the following proportions, that is to say: three equal undivided fourth parts to the said Timothy Wiggin, and one equal undivided fourth part thereof to the said William Hurrey, (trustee of the said Adeline W. Torrey), and to their only proper use, benefit, and behoof forever, in manner aforesaid; provided always, and it is hereby declared, that the foregoing deed and conveyance is made upon the following conditions, and subject thereto, that is to say: that

they, the said party of the second part, their heirs and assigns, shall not erect or construct any building or buildings upon the premises hereby granted, or any part thereof, except the said rail or tramway and docks and wharves, and a store-house for their accommodation, with the necessary appurtenances, on the northeast end of said lot, and between the beginning corner thereof, and the wharf to be hereafter erected by the said party of the second part thereon; and further, that they, the said party of the second part, their heirs or assigns, shall not sell, assign, or convey the said premises hereby granted, or any part thereof, to any person or persons whatsoever or whosoever, except that one of the said parties of the second part, or their or either of their heirs or assigns, may purchase of the other, their heirs or his heirs or assigns, the whole or a part of the said interest, without first offering the same to the said party of the first part, their heirs or assigns, and giving to them, previously, sixty days' notice, in writing, of such intended sale, and demanding the said party of the first part, their heirs or assigns, to purchase the same, with all the improvements, at ten dollars per acre, and allowing them to purchase the same at the said price, if they shall be minded so to do within the said time, whereupon they, the said party of the first part, their heirs or assigns, shall have the option of purchasing the same at any time within the said sixty days, at the said price; and if they shall neglect or refuse so to do within the said period, at the said price, they, the said party of the second part, may thereupon sell and convey the same to whosoever they may see proper; and also upon this further consideration that if· they, the said party of the second part, their heirs or assigns, shall at any time hereafter wholly cease to use the said rail or tramway for the purpose of transportation or conveyance, or suffer the same to go entirely out of repair,·and to become unfit for use, or cease to use the same for transportation or conveyance for the space of five whole years, that then, or in

either of the said cases, or on failure of any of the said conditions, or either of them, this deed and the estate hereby granted shall cease, determine, and become utterly void, anything herein contained to the contrary notwithstanding; and the said premises shall revert to the said party of the first part, their heirs and assigns, and re-vest in them, in as full and ample manner as if this deed had not been made; and they shall be entitled to demand of the said party of the second part a re-conveyance thereof, if they shall desire the same; and the said Anthony Ivins, for himself and his heirs, executors, and administrators, doth covenant, grant and agree to and with the said party of the second part, their heirs and assigns, that they, said party of the first part, are lawfully seized in their own right of a good, absolute, and indefeasible estate of inheritance of and in all and singular the hereby granted premises, and have good right, and full power, and lawful authority to convey the same, in manner aforesaid; and that they are free of encumbrance, and that the said party of the second part, performing the considerations herein expressed, shall and may hold and possess the same peaceably and quietly; and that he, the said Anthony Ivins, his heirs, executors and administrators, the said granted premises unto the said party of the second part, their heirs and assigns forever, performing all and singular the considerations expressed, excepting as aforesaid, against all persons whatsoever lawfully claiming or to claim the same, shall and will warrant and forever defend."

The defendant was in possession of the premises, as tenant of the grantees, by virtue of a written lease.

The suit was brought September 20th, 1852, and was tried before a jury at the Ocean Circuit, October Term, 1854. On the trial it appeared by the evidence that the railroad track on the premises had not been used after the fall of 1846, being more than five years before the commencement of the suit; that it had then become so

much out of repair that it was unfit for use, and from that time had been abandoned.

After the evidence was closed, the court, by consent of the parties, with the reservation to either party to except to the same, charged the jury that under the evidence, the plaintiff was entitled to recover the lands described in the consent rule. The jury rendered a verdict for the plaintiff, and judgment was entered thereon. The defendant excepted to the charge of the court, a bill of exceptions was allowed and sealed, and a writ of error brought removing the cause to this court.

Argued at June Term, 1857, before the CHIEF JUSTICE, and Justices ELMER, POTTS and VREDENBURGH.

*B. F. Randolph*, for the plaintiff in error.

*W. L. Dayton*, for the defendant.

The CHIEF JUSTICE delivered the opinion of the court.

This action was brought in the court below, by the defendant in error against Cornelius, to recover possession of a tract of land in the county of Ocean. The lessors of the plaintiff claimed title by devise from their father, Anthony Ivins. The defendant claimed title under a deed from said Anthony Ivins and Sarah, his wife, to Timothy Wiggin and William Hurrey, trustee of Adeline W. Torrey, dated the twenty-first of March, 1842. The validity of the said conveyance from Ivins and wife is not questioned, but the plaintiffs insist that the estate thereby conveyed has been forfeited by a breach of the conditions contained in the deed. Whether such forfeiture has been incurred, is the question submitted for consideration.

The deed conveys a lot of land on Toms river, and a strip of land thirty feet in width extending from said lot across the lands of the grantor, " the several courses most suitable or available for a rail or tramway," four miles

more or less, to lands formerly belonging to the Monmouth Purchase Company. The deed reserves to the grantor and his heirs and assigns forever the free and uninterrupted right of way, to travel with teams and carriages upon either side of the rail or tramway, to be built upon the premises by the grantees; also the right of leading and conducting water under the said rail or tramway; also the right and privilege of demanding and recovering wharfage or compensation for anything landed on the wharves, to be erected by the grantees on the premises fronting on Toms river, by persons not in the employ of the grantees or navigating their vessels; also the right and privilege of loading or unloading any vessel of the grantor upon the said wharves, when not used by the grantees for their own purposes.

The conveyance is declared to be made upon, and subject to, the following conditions, viz. :

1. That the grantees, their heirs or assigns, shall not erect or construct any building upon the premises conveyed, except the said rail or tramway and docks and wharves, and a store-house for their accommodation, with the necessary appurtenances.

2. That the grantees, their heirs or assigns, shall not convey the said premises, or any part thereof, without first offering the same to the grantors, their heirs and assigns, and giving to them sixty days' notice of such intended sale, and permitting them to purchase the lands, with all the improvements thereon, at ten dollars per acre.

3. That if the grantees, their heirs or assigns, should at any time wholly cease to use the said rail or tramway for the purpose of transportation or conveyance, or suffer the same to go entirely out of repair and to become unfit for use, or cease to use the same for transportation or conveyance, for the space of five whole years, that then, or in either of said cases, or on failure of any or either of said conditions, the deed and the estate thereby granted should cease, determine, and become utterly void, and

the said premises should revert to the grantors, their heirs and assigns, and re-vest in them in as full and ample a manner as if this deed had not been made.

However inartificial and untechnical the deed may be in its structure and in many of its provisions, there is no possibility of mistaking the intention of the parties. The design of the conveyance was to vest the land in the grantees for the sole and exclusive purpose of constructing thereon a rail or tramway, with wharves at its termination upon navigable water, and the necessary store-houses and buildings for the convenience of the road in carrying on the business of transportation.

It is equally clear that the stipulations in the deed are not covenants merely, but conditions, the violation of which was designed to effect, and does in terms involve a forfeiture of the estate. There is upon this point no room for the rules of interpretation, to decide whether the clauses of the deed operate as covenants or conditions. Rules of construction can only apply in cases of doubt or of the interference of legal principles with the plain import of language. Two questions only can arise upon the operation and effect of these conditions, viz. :

1. Are they or either of them valid ?

2. Have they been violated ?

Whatever doubt or difficulty might exist at common law in regard to the first two conditions, there can be none in regard to the third, which relates to the continued maintenance and use of the road. Though the deed was founded upon a pecuniary consideration, it is obvious that an important inducement to the conveyance was the benefit and advantage to the grantor, derived from the construction and continued use of the road across and contiguous to his lands. The condition was beneficial to the grantor, and entering into the consideration of, and operating as an inducement for, the grant, it was not unreasonable. If the land was sold by the grantor, and purchased by the grantees for the sole purpose of construct-

Cornelius v. Ivins.

ing a road, if that was the sole object in contemplation of both parties, there is surely nothing unreasonable in enforcing compliance with the terms of the contract. Nor was it inconsistent with or repugnant to the nature of the estate granted. A condition that the grantee shall not alien or take the profits of the estate granted, is repugnant to the nature of the estate, and void, because it is of the essence of a fee simple estate that it shall be alienable, and that it shall enure to the benefit of the grantee. But a partial or temporary restriction as to the use of the estate granted may be consistent with the nature of the estate. Thus a condition that the grantee shall not alien to a particular individual, or for a limited time, or that he shall not use it for a specified purpose, or in a prescribed manner for a limited time, has always been held valid. *Co. Litt.* 206, *b.* 223 *a ;* 1 *Shep. Touch.* 129, 131. But the condition now under consideration imposes no restriction upon the use of the estate inconsistent with its nature. It simply requires that a railroad shall be maintained upon it. This is no more inconsistent with the nature of the estate, than would be a condition that the grantee should forever maintain a road or a water-course across the land, for the convenience of the adjoining estate of the grantor.

But it is objected, that if the condition be valid, the right of entry for breach of the condition is limited to the grantee and his heirs, and did not pass by devise to the lessors of the plaintiff. Such was the well-settled rule of the common law recognized and adopted by this court in *Southard* v. *The Central Railroad Co., ante* 21.

It was further held in that case, that the act of March 14th, 1851, authorizing the transfer of estates in expectancy (*Nix. Dig.* 126, § 32,) has altered the rule of the common law. That act authorizes the transfer of a right of entry for condition broken, or other future estate or interest in expectancy, by will or deed executed after the act went into operation. The act, by its terms, took effect

immediately. The will of Anthony Ivins, the devisor under whom the lessors of the plaintiff claim title, bears date on the eighth of April, and was admitted to probate on the seventeenth of May, 1851. The will, therefore, is clearly within the operation of the act, and is operative to transfer estates in expectancy. The will itself has not been in the hands of the court, but no question is made but that its terms are sufficient to pass the estate in question. The title to the forfeited estate, and the right of entry for the breach of the condition, is therefore vested in the lessors of the plaintiff.

It is further insisted that an actual entry is necessary in order to maintain the action.

As a general rule, it is not necessary to make an actual entry on land in order to maintain the action of ejectment. The *right* to enter, not an *actual entry*, is requisite to sustain the action. *Hylton's Lessee* v. *Brown*, 1 *Wash. C. C. R.* 204; *Den* v. *McShane*, 1 *Green* 40; *Siglar* v. *Van Riper*, 10 *Wend.* 414; *Lessee of Rugge* v. *Ellis*, 1 *Bay.* 111; *Adams on Eject.* 10.

And even where, upon strict common law principles, an entry is necessary, as in case of the forfeiture of an estate upon condition, to complete the title, an actual entry is not necessary to maintain ejectment. Thus in *Langhorne* v. *Merry*, 1 *Siderfin* 223, the court held that an entry should be intended till the contrary is proved. So it has been held, in a series of cases running back for more than a century and a half, that the formal confession of lease, entry, and ouster is sufficient to maintain an ejectment for the recovery of a forfeited estate upon condition broken, and that actual entry is not necessary, except to award a fine. *Little* v. *Heaton*, 1 *Salk.* 259; *S. C.*, 2 *Ld. Ray.* 750; 1 *Vent.* 248; *Oates* v. *Brydon*, 3 *Burr.* 1897; *Jackson* v. *Crysler*, 1 *Johns. Cas.* 125; *Goodright* v. *Cator*, *Douglass* 485.

In *Chalker* v. *Chalker*, 1 *Conn.* 79, a different doctrine, as applied to the action of disseisin, used in that state, is main-

tained in a very elaborate and well-considered opinion, in which the whole bench concurred.

In this state there is no express adjudication upon the point; the practice is believed to have been uniformly in accordance with the principle maintained in England and New York. In *Den* v. *The Lawrence Church, Spencer* 551, no evidence of an entry was offered on the part of the plaintiff. In the more recent case of *Den* v. *The Central Railroad Company of New Jersey, ante* 13, the point was raised, though not pressed by counsel, that a demand of possession was necessary; but the necessity of a formal entry to complete the title was not suggested. The practice has been long settled; and as an actual entry on the land is but a formal and unmeaning ceremony, devoid of any practical meaning and unattended by any real advantage, there can be no utility in enforcing it, however strong the technical reasons in its support. In Goodright *v.* Cator, Lord Mansfield, in delivering the opinion of the court, said, "we look upon it as having been fully settled in 1703, by the opinion of all the judges, upon deliberation and consideration of all the cases, that actual entry is only necessary to avoid a fine; and so the practice has been ever since. The reason of the thing is agreeable to the practice, for it is absurd to entangle men's rights in nets of form without meaning; and an ejectment being a mere creature of the court, framed for the purpose of bringing the right to an examination, an actual entry can be of no service."

The judgment must be affirmed.

Cited in *McKelway* v. *Seymour*, 5 *Dutch.* 332.