20 N.J. Super. 216 (1952)
89 A.2d 484
CHARLES W. HAWKINS, ET AL., PLAINTIFFS,
v.
ROBERT L. REYBURN, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided June 11, 1952.
*217 Mr. Samuel Y. Hampton, attorney for plaintiffs.
Mr. George S. Skokos, attorney for answering defendants.
Mr. J. Gerard Carton, amicus curiae.
SCHETTINO, J.S.C.
Plaintiffs seek judgment quieting title to their property on Fourth Avenue, Asbury Park, New Jersey. This litigation arises out of certain provisions contained in a deed in the chain of plaintiffs' title from John and Jane Langford to Jacob R. Borden. Defendants are heirs of the Langfords.
In 1870 and 1871, James A. Bradley acquired a large tract of land which he developed as Asbury Park. Bradley conveyed the premises in question to Langford by deed dated September 4, 1875. He therein included two provisions, which appeared as well in most of the early deeds out of Bradley.
One provision reads:
"The said premises is hereby conveyed subject to the following conditions, to wit: That no house cottage or other building shall ever be erected thereon nearer the line of said Fourth Avenue than twenty five feet. And also, that the maximum grade of said Lot shall not exceed four feet above the level of the sidewalk in front of same."
The other provision reads:
"Subject, nevertheless, to the following covenants and conditions: `The said party of the second part, for himself, his heirs, executors, administrators, and assigns, covenants that he and they shall never use said premises, or cause the same to be used for the sale of intoxicating liquors, or for any manufacturing purpose whatever, and that no hog pens shall ever be erected thereon, and it is hereby *218 mutually made a part of this sale, that any violation of the above conditions, shall cause the title to revert to the said party of the first part.'"
The deed from the Langfords to Borden, dated June 24, 1879, contained the following:
"The said premises is hereby conveyed subject to the following conditions, to wit: That no house cottage or other building shall ever be erected thereon nearer the line of the said Fourth Avenue than twenty five feet (25 ft.). And also that the maximum grade of said lot shall not exceed four feet above the level of the sidewalk in front of same. And subject nevertheless to the following covenants and conditions: `The said party of the second part for himself, his heirs, executors administrators and assigns, covenants that he and they shall never use said premises or cause the same to be used for the sale of intoxicating liquors, or for any manufacturing purpose whatever, and that no hog-pens shall ever be erected thereon, and it is hereby mutually made a part of this sale that any violation of the above conditions shall cause the title to revert to the said party of the first part.'"
These provisions are verbatim reproductions of the provisions in the deed from Bradley to Langford, with a minor difference as to format only, and are followed immediately by a recital that the premises are the same conveyed by Bradley to Langford by the deed already mentioned.
The second quoted provision of the Bradley deed created a condition subsequent, for the breach of which title might be defeated. As stated above, other deeds made by Bradley contained like provisions. It appears that at later dates Bradley executed numerous agreements with owners of property thus affected, whereby the condition subsequent was terminated as to their properties; and covenants to the same effect, but of a purely restrictive nature, were substituted. By his will, Bradley empowered his executors to make like agreements upon request without any charge to the grantees. Bradley's estate is still kept open for that purpose.
The question here raised is whether the deed from the Langfords to Borden operated to create conditions in favor of the Langfords for the violation of which the Langfords and their heirs could claim title. There appears to be no *219 controlling decision in this State and little pertinent authority elsewhere. The answering defendants assert the affirmative of the stated proposition. It is stipulated that no violation has yet occurred, but plaintiffs seek to free their title of the doubt.
Defendants assert that the Langfords could legally provide for their own benefit the same conditions subsequent which Bradley had imposed for his benefit, and cite Parry v. Berkeley Hall School Foundation, 10 Cal.2d 422, 74 P.2d 738 (Cal. Sup. Ct. 1937), annotated in 114 A.L.R. 562. I do not think it necessary to determine whether the Langfords could impose conditions subsequent identical with those imposed by Bradley, because the preliminary question, the solution of which I find dispositive, is whether the Langfords intended to do so. In the Parry case, it was clear that the initial grantor intended that the grantee impose identical conditions subsequent for that grantee's benefit. The initial grantor there conveyed the tract to a trustee bank with Berkeley Hall School Foundation as beneficiary. In the words of the California court, "The declaration of trust provided that all lot sales should be subject to these conditions, and required the trustee bank to reserve to itself, for the benefit of the Foundation, a right of re-entry for breach of such conditions." 74 P.2d at page 739. In those circumstances it was evident that the original grantor intended that the right of re-entry be enjoyed by the trustee bank and that the trustee bank likewise so intended in its conveyances. Hence that case does not bear upon the problem of construction to which I have referred.
There is no express statement of a purpose to create a right of re-entry in the Langfords except insofar as one might infer it from the quoted provisions. All circumstances militate against that purpose. It was stipulated in the pretrial order that:
"John and Jane Langford, grantors in 1879 of the premises in question, were at various times the owners of two other parcels of land in Asbury Park, one situated on First Avenue and one on Asbury *220 Avenue. In one instance they purchased the property from James A. Bradley subject to certain conditions with reverter clause and they conveyed the same with the conditions recited verbatim. In the other instance the deed from Bradley contained no conditions and the Langford Deed also no conditions. In the instant case John and Jane Langford in their deed to Jacob R. Borden, the deed in question, copied the Bradley conditions word for word, even as to quotation marks."
The Langfords conveyed to Borden by warranty deed and it seems clear that they incorporated the Bradley provisions for the sole purpose of precluding a claim for breach of the covenants of their deed to Borden, rather than for the purpose of creating a right of re-entry in their favor. Insofar as recapture of title is concerned, it would have been essentially pointless for the Langfords to create that right in themselves, because a breach by their grantee or a subsequent grantee would be the occasion for the assertion of a paramount right by Bradley or his heirs. Whether or not an actual re-entry by Bradley or his heirs would be necessary to terminate the grantee's estate (see Cornelius v. Ivins, 26 N.J.L. 376, 386 (Sup. Ct. 1857); Carpender v. New Brunswick, 135 N.J. Eq. 397, 401 (Ch. 1944)), it is apparent that a right of re-entry in Langford would have been of academic value. The possibility that Bradley might some day release his right of re-entry could hardly have motivated the Langfords to exact the right for their own benefit. The inclusion of the Bradley provisions at length equalled the more conventional recital that the grant was subject to the covenants of the Bradley deed. Absent words plainly indicating a different purpose, it must be concluded that the Langfords did not intend to augment the burden upon the title.
This conclusion is fortified by the settled view that conditions subsequent are not favored. Riverton Country Club v. Thomas, 141 N.J. Eq. 435, 440 (Ch. 1948), affirmed on opinion below, 1 N.J. 508 (Sup. Ct. 1948); Carpender v. New Brunswick, 135 N.J. Eq. 397, 400 (Ch. 1944); Board of Education, West Paterson v. Brophy, 90 N.J. Eq. *221 57, 62 (Ch. 1919); 19 Am. Jur., Estates, sec. 65, p. 527; 2 Powell on Real Property (1952 ed.), Cum. Supp., sec. 188, p. 46; 4 Thompson on Real Property (1940), sec. 2044, p. 571; Walsh, Law of Property (1927), p. 395. One need but consider the confusion which would attend titles to real property if the courts were prone to find that repetitions of identical conditions subsequent in a chain of title created multiple rights of re-entry in grantors and their multiple heirs or devisees. The array of parties defendant in this suit emphasizes the practical considerations involved.
It seems to me that the rule more likely to coincide with probabilities and surely more satisfactory in operation is that the repetition by an intermediate grantor of an identical condition subsequent and right of re-entry will not be construed as intending to create a right of re-entry in him unless that purpose unequivocally appears. As indicated above, the question whether that purpose may in any event be achieved must await a situation requiring its determination. I intend no expression with respect to it.
Judgment for plaintiffs will be entered without costs.