[No. 1634.]

SARA P. ENNOR, as Special Administratrix of the
Estate of J. R. ENNOR, Deceased, Appellant, v. J.
P. RAINE, Respondent.

Waters and Water Courses—Irrigation—Prior Appropriator—Rights—
Trespass—Counterclaim—Objections—Waiver.

1. Under Act Cong. July 26, 1866, c. 262, 14 Stat. 251 [U. S. Comp. St. 1901,
p. 1437], giving to a prior appropriator of water rights a right of way
over land along the natural channel of the stream, etc., a prior
appropriator is not a trespasser in going upon the lands of another,
and along the stream and ditches constructed by the latter, for the
purpose of removing dams, etc., by which the flow of water so pre-
viously appropriated was obstructed and diverted.
2. Where, in an action for injuries to water rights, the district court in
which the action was brought had jurisdiction of the subject-matter
of a counterclaim by defendant, claiming to be a prior appropriator
of the water, alleging damages from plaintiff's alleged diversion
thereof, plaintiff's failure to object in the trial court by demurrer or
otherwise that the facts alleged in the answer did not constitute a
proper counterclaim, constituted a waiver of his objection thereto.

APPEAL from the District Court of the Third Judicial Dis-
trict of the State of Nevada, Eureka County; W. D. Jones,
Judge.

Action by J. C. Ennor, revived after his death in the name
of Sara P. Ennor, as special administratrix, against J. P.
Raine. From a judgment in favor of defendant, on a
counterclaim, plaintiff appeals. **Affirmed.**

The facts sufficiently appear in the opinion.

*J. W. Dorsey*, for Appellant:

I. The action of the plaintiff is sound in tort; it is an
action at law for trespass, *quare clausum fregit.* Every
unwarrantable or illegal entry and interference, however
slight, which disturbs another in the enjoyment of his prop-
erty, is a trespass. The ownership of the land intruded upon
is immaterial, and therefore such an action involves no ques-
tion of title, as it is equally a trespass to disturb a peaceable
possession as to invade premises held in fee simple. (*Mar-
vell* v. *Gray's Lessee*, 1 Am. Law Reg. O. S. 382; Walker's
Am. Law, 8th ed. 593; *Lewis* v. *Johns*, 34 Cal. 629; *Hatch*
v. *Donnell*, 74 Me. 163; *Newcombe* v. *Irwin*, 55 Mich. 620;
*Rand* v. *Sargent*, 25 Me. 526; 39 Am. Dec. 625.)

II.   Defendant recovered a judgment for $100 damages and $698.40 costs, and therefore it is manifest that the judgment was, and could only have been, based upon the defendant's counterclaim, and that it is erroneous unless the counterclaim was legally interposed, and constituted a proper foundation for an affirmative judgment.  If, therefore, the counterclaim was not within the authority of the statute, it was illegal.  If it was invalid, it created no issues; and as recovery must be supported by authorized pleadings, the verdict was outside of the issues and could not support the judgment.  The verdict was based upon the counterclaim, and it only remains to show that the counterclaim was bad to establish our contention that "the evidence given at the trial was insufficient to justify the verdict," and "that the verdict is against law."

III.   Section 3141, Compiled Laws of 1900, authorizes the interposition of a counterclaim, and section 3142 describes of what it shall consist.  The transaction set forth in the complaint is "that which was done" by the defendant.  It was breaking his close.  It was a forcible and unlawful entry upon and injury to plaintiff's lands and crops.  The subject of the action is "that in regard to which the action is brought."  It is "the matter or thing concerning which the controversy has arisen."  It is "that right, interest or property which has been affected."  The transaction complained of in the counterclaim is plaintiff's interference with the flow of the waters of Pine creek, and the "subject of the action" therein is the appropriation and ownership of the usufruct of the water.  The plaintiff's right to recover did not depend upon whether he owned the water, though it might have been defeated if by impounding it he created a nuisance which the defendant legally abated.  However, such a defeat would not be because the water was the subject of the action and would therefore sustain the counterclaim, but because the defendant's ownership of the water, and the plaintiff's interference with its flow, might be used as a defense to justify the defendant's entry.  The averments of the complaint upon this branch of the trespass were but allegations of special damage.  The plaintiff was but following the general rule that, where the damages are of such a

nature that they do not follow as a natural consequence of the injury complained of, they should be specially pleaded. (*Cole* v. *Swanston*, 1 Cal. 51; *Jacob* v. *Lorenz*, 98 Cal. 332, 339; *Smith* v. *Los Angeles R. Co.*, 98 Cal. 210, 217; *Stevenson* v. *Smith*, 28 Cal. 103; *Mallory* v. *Thomas*, 98 Cal, 644; *Gay* v. *Winter*, 34 Cal. 162; *Lewiston Turnpike Co.* v. *Shasta Road Co.*, 45 Cal. 565; *Treadwell* v. *Whittier*, 80 Cal. 580; *Buckley* v. *Buckley*, 12 Nev. 435.)

IV.   The defendant's counterclaim does not fall within the authority of section 3142 of the Compiled Laws, was not available as such, and could not constitute the basis of a judgment in his favor   (Webster's Dictionary, word "transaction"; *Burris* v. *Nevins*, 27 Barb. 493, 495, 498; *Muberger* v. *Koenig*, 62 Wis. 558, 562–4; Bliss Code Pl. sec. 126; *Bazemore* v. *Richards*, 10 S. E.; *Silver Creek* v. *Hayes*, 113 Cal. 146; *Nowell* v. *Thompson*, 2 Hill (S. C.) 470; *Pattison* v. *Richards*, 22 Barb. 143–145; *Wagenheim* v. *Graham*, 39 Cal. 169–177; *McDougall* v. *Maguire*, 35 Cal. 274; *Barker* v. *Platt*, 1 N. Y. Supp. 416; *Heckman* v. *Swartz*, 55 Wis. 173; *Chamboret* v. *Canney*, 2 Sweeney, 378, 41 How. Pr. 125; *Lemair* v. *Griswold*, 40 N. Y. Sup. Ct. 100.)

V.   The objection that a counterclaim is invalid is never waived—it may be taken at any time.   (*Coleman's Appeal*, 75 Pa. St. 441–461; *Doctor* v. *Hartman*, 74 Ind. 221; *Mathie* v. *McIntosh*, 40 Wis. 120; *Thompson* v. *Steamboat*, 20 Ohio St. 26; 12 Am. & Eng. Ency. Law, 1st ed. 306, 307.)

VI.   A party can neither prove, nor if proven, can he recover upon a cause of action different from the one pleaded. (*Owen* v. *Meade*, 104 Cal. 179–183; *Heinlein* v. *Heilborn*, 71 Cal. 557, 563; *Noonan* v. *Nunan*, 76 Cal. 44–48; *Daly* v. *Russ*, 86 Cal. 114–118; *Yates* v. *James*, 89 Cal. 474–477; *Reed* v. *Norton*, 99 Cal. 617, 619, 620; *Patterson* v. *V. & G. T. Ry.*, 49 Mich. 184–189; *Gage* v. *Curtis*, 122 Ill. 520; *Luce* v. *Foster*, 42 Neb. 818.)   Facts found constituting a cause of action different from one pleaded are outside of the issues, and will not support a judgment for the party in whose favor the facts are found.

VII.   It is no answer to say that the pleading is supported by the proofs if the pleading itself is unauthorized.   In such case the allegations of such unauthorized pleadings are irrele-

vant and immaterial, and consequently any finding upon them is outside of the legal issues. (*Ruddell* v. *Los Angeles County*, 118 Cal. 281, 286, 288; *Riverside* v. *Water Co.*, 108 Cal. 240, 244, 246; *Ortega* v. *Cordero*, 88 Cal. 221, 225, 229; *Hall* v. *Arnot*, 80 Cal. 346; *Meadock* v. *Clarke*, 59 Cal. 683; *Devoe* v. *Devoe*, 50 Cal. 58; *Phelan* v. *Gardner*, 43 Cal. 306; *Morenhaut* v. *Barron*, 42 Cal. 501; *Curtis* v. *Walling*, 18 Pac. 54.)

VIII. If facts found by a court outside the issues will not support a judgment, for the same reason, and upon the same authority, a verdict outside the issues will not support a judgment, because a general verdict must embrace all the findings necessary to support the judgment, and it must be based upon the material allegations of the pleadings.

IX. Whatever the presumption as to the regularity and validity of the proceedings of a superior court, they are overcome by showing, first, that the proceeding was not within the general scope of its powers; second, that its record states the facts, and such facts are not sufficient to give the court jurisdiction, or jurisdiction is negatived by the record. (*Hahn* v. *Kelly*, 34 Cal. 402; *Justin* v. *Gaunt*, 4 Or. 305; *Greenstreet* v. *Thornton*, 60 Ark. 374; *Settlemeir* v. *Sullivan*, 97 U. S. 444; *Richards* v. *Ladd*, 6 Saw. 40; *Harris* v. *Hardeman*, 14 How. 334; *Clarke* v. *Thompson*, 47 Ill. 25; *Barber* v. *Morris*, 37 Minn. 194; *Ray* v. *Ray*, 1 Idaho, 576; *Pioneer Co.* v. *Maddux*, 109 Cal. 540; *Davidson* v. *Clark*, 7 Mont. 101; *Morey* v. *Morey*, 27 Minn. 267.)

X. The counterclaim in this case neither arose out of the transaction set forth in the complaint as the foundation of defendant's claim, nor was it connected with the subject of plaintiff's action. It was without authority of law. The statute grants and measures the defendant's right, and is the source and limitation of the court's power. In short, the matter is jurisdictional. Jurisdiction is not only the power to hear and determine, but it is also the power to render the particular judgment in the particular case. (*Windsor* v. *McVeigh*, 93 U. S. 274, 282, 283; *Ex Parte Siebold*, 100 U. S. 371.)

XI. The court erred in sustaining defendant's objection to the following questions, and to each of them propounded

by plaintiff: "Q. Did you have time, at or prior to the time when you opened any of the dams, to have applied to the courts to abate them?" "Q. Were you able at that time to go to Elko or Eureka to employ counsel, or apply to the courts in either place to aid you in abating the nuisance of Ennor's dams, of which you complain, and which you abated yourself?" "Q. Did you ever apply to any court to abate any of Ennor's dams, or restrain him in any way concerning his management of the water?" The inquiries were for the purpose of ascertaining whether defendant's acts in abating what he termed a nuisance were necessary; whether the conditions were such as not to brook delay; whether there was ample time and opportunity to appeal to a tribunal of justice; whether, in short, the plaintiff was warranted by the circumstances in taking the law into his own hands. The law generally affords ample redress for all injuries, and no justification for the removal of an alleged nuisance will be upheld where time and opportunity for access to the courts existed. (Wood on Nuisances, sec. 838.)

XII. It was a legitimate subject of inquiry whether Raine acted recklessly and wantonly and in disregard of the property rights of the plaintiff; whether he had already applied to the court for relief, and then had taken the matter into his own hands.

XIII. In rebuttal the plaintiff offered to prove that he owned the waters of Pine creek; that he had acquired title by adverse possession. The defendant objected, and the court excluded the evidence, to which plaintiff excepted. The plaintiff had the right in rebuttal to introduce any competent evidence tending to defeat the defendant's affirmative case. (*Chadbourne* v. *Franklin*, 5 Gray, 312; *Bancroft* v. *Sheehan*, 21 Hun, 550; *Scott* v. *Woodward*, 2 McCord (S. C.) 161; *Coe* v. *Clough*, 70 Cal. 347; *Union Water Co.* v. *Crary*, 25 Cal. 509; *Davis* v. *Gale*, 32 Cal. 35; *Evans* v. *Ross*, 65 Cal. 439; *Dean* v. *Corbett*, 51 N. Y. Sup. Ct. 103.)

XIV. The court erred in refusing to allow plaintiff to prove in rebuttal, or to reopen the case for the purpose of proving his prior right by prescription, or otherwise, to the waters of Pine creek. The court erred in refusing to give plaintiff's instruction No. 4, by which it was intended to

inform the jury under what circumstances a private individual may redress his own wrongs in such case. It states the law correctly, and in applying it the jury might have determined whether, in abating a nuisance, the defendant's conduct was arbitrary, unnecessary, willful and wanton. The right to abate a nuisance cannot be exercised when its exercise involves a breach of the peace. (*Day* v. *Day*, 4 Md. 262; *Perry* v. *Fitzhouse*, 8 Q. B. 757; Cooley on Torts, 47; Wood on Nuisances, sec. 837; 1 Hill on Torts, 607.)

XV. The court erred in giving defendant's instruction No. 5, because by it the jury are instructed that defendant is entitled to all of the water which he appropriated and used for a beneficial purpose during any previous July before plaintiff's appropriation. This utterly ignores present need and beneficial use. Under the law of appropriation a claimant should not be allowed to imitate the dog in the manger. He cannot withhold from others what he cannot beneficially use himself. No appropriator can complain of a diversion so long as his needs are supplied. Whenever an appropriator ceases to use for a beneficial purpose, his power or authority to control the water ceases. (*Santa Paula Water Works* v. *Peralta*, 113 Cal. 38–44; *Slosser* v. *Salt River Valley Canal Co.*, 65 Pac. 332, 336; *Winter* v. *Simmons*, 27 Or. 5; Am. St. Rep. 685; 39 Pac. 6; *Anaheim Water Co.* v. *Semi-Tropic Water Co.*, 64 Cal. 185; 30 Pac. 623; *North Powder Co.* v. *Coughanour*, 34 Or. 922; 54 Pac. 223, 227; *Saint* v. *Guerrerio*, 31 Am. St. 320, 323; 30 Pac. 335, 337; 17 Colo. 448; *Power* v. *Switzer*, 21 Mont. 523; 55 Pac. 32, 35.)

XVI. The court erred in giving defendant's instruction No. 7, because it ignores the question of force and necessity; because it authorizes the utter destruction of plaintiff's ranch and crops, if such result were necessary to enable the defendant to assert his claim to any portion of the water he had appropriated, however small; because under it the most damaging trespass and injury are authorized to assert and maintain the most trifling right.

XVII. Two independent causes of action, one in favor of defendant and the other in favor of plaintiff, were illegally heard and determined in the same action. The verdict of the jury was based upon issues outside of the case, because

founded upon an unauthorized counterclaim, and is therefore against law. The evidence was insufficient to justify the verdict, because it was based upon the illegal counterclaim.

*E. S. Farrington* and *Thomas Wren*, for Respondent:

I. No appeal was ever taken from the judgment. The only appeal which has been taken herein is from the order overruling the motion for a new trial. It is now too late to appeal from the judgment, and the only questions which can be raised are those which are presented on the appeal from the order overruling the motion for new trial. In the notice of motion for new trial, three grounds only are mentioned: (*a*) The evidence given on the trial was insufficient to support the verdict; (*b*) The verdict is against law; (*c*) Errors in law occurring at the trial and excepted to by the party making the application.

II. Plaintiff's contention is that the lower court was without jurisdiction to render the judgment which was entered in this case, because it was based upon an unauthorized and illegal counterclaim. The defendant contends not only that the counterclaim is legal, but raises the following fatal objections to the consideration of the counterclaim on appeal: No objection was made to the counterclaim in the lower court at or before the trial; no objection was made to the introduction of testimony in support of the counterclaim at the trial; no exception was taken at the trial to any ruling of the court in relation to the counterclaim; the counterclaim is not mentioned or alluded to in any manner whatever in the specifications of error; the alleged impropriety or illegality of the counterclaim was never called to the attention of the trial court; the alleged impropriety or illegality of the counterclaim has never been assigned as error; appellant failed to demur to the alleged misjoinder of counterclaim; appellant failed to move to strike out the counterclaim; appellant failed to appeal from the judgment.

II. The counterclaim is a complaint. It has frequently been held that a misjoinder of causes of action in the complaint is waived if not taken advantage of by demurrer or answer; and the same reasons which hold a negligent defendant to a waiver in the case of a misjoinder of action in the

complaint apply with equal force to a negligent plaintiff who fails to object to a misjoinder of a counterclaim.  Below are a few among many cases which hold that the court will notice an objection to a petition on the ground that two causes of action are improperly joined unless seasonable objection was made on the trial: *Roberts* v. *Eldred*, 73 Cal. 398; *Baugh* v. *Barrett*, 29 N. W. 425; *Bank* v. *Miltenberger*, 51 N. W. 232; *Richmond* v. *Jones* (Ala.) 14 So. R. 786; *Fillmore* v. *Wells*, 15 Pa. 349; *Bernstein* v. *Huner*, 30 N. Y. S. 540; *McKune* v. *Santa Clara Co.*, 42 Pac. 980.

III.  By failing to object or except to the counterclaim, or to assign the joinder of the same as error, in the specifications at or before the trial, the plaintiff has waived all objections to the counterclaim, even though it should be conceded that the counterclaim is improperly joined.  (*Walker* v. *Johnson*, 28 Minn. 147, 9 N. W. 632; *Westervelt* v. *Ackley*, 62 N. Y. 505–508; *Mississippi Co.* v. *Prince et al.*, 34 Minn. 79, 24 N. W. 344; *Puffer* v. *Lucas*, 101 N. C. 281, 7 S. E. 868; *Lace* v. *Fixen*, 39 Minn. 46, 38 N. W. 762; *Ayers* v. *O'Farrell*, 10 Bosw. N. Y. 143; *Hummond* v. *Terry*, 3 Luns. N. Y. 186; *Lee* v. *Russell*, 38 S. W. 874 (Ky.); *Kirsch* v. *Kirsch*, 83 Cal. 635; *Talty* v. *Torling*, 82 N. W. 632; *Gillett* v. *Moody*, 54 S. W. 35; *Vann* v. *Rouss*, 94 N. Y. 401–407; *Fitzgerald* v. *Cross*, 30 Ohio St. 444; *Wilson* v. *Larmouth*, 3 Johns. N. Y. 433; *Herritt* v. *Seaman*, 6 Barb. N. Y. 330; *Wyman* v. *Herrard*, 59 Pac. 1018; *Frank* v. *Motley Co.*, 37 S. W. 868; *Township of Noble* v. *Aasen*, 76 N. W. 990.)

IV.  In the case of *Ayers* v. *O'Farrell et al.*, 10 Bosw. (N. Y.) 143, which was an action to recover rent, the answer denied the indebtedness, and set up, as a counterclaim, damages done to defendant's merchandise by steam and soot from a bakery established by plaintiff in the lower part of the building leased.  On the trial the court excluded defendant's evidence in support of the counterclaim.  The court held that the provisions of the code regulating objections to a complaint were equally applicable to an answer setting up a counterclaim, and when an issue of fact is raised by such a counterclaim, the plaintiff must be deemed to have waived every objection to form which is not raised by reply or demurrer thereto.  Although a provision in similar language

for demurrer to answer is wanting, it also holds that a plaintiff in an action who does not demur to an answer which sets up as a counterclaim a demand not properly admissible as such in the action, but takes issue upon it by replying thereto, thereby agrees to try such demand on its merits as though testimony was offered in support of a counterclaim. Plaintiff objected that "such proof was incompetent under the circumstances of the case." The court held that the counterclaim was improper, but the objection had been waived by failing to make any other objection than the above. New trial was denied. The court further said: "The demand sought to be set off, if rejected, is now barred by the statute of limitations. If the objection had been frankly stated at the trial defendants might have withdrawn it and saved it by bringing a cross action." In the case at bar, if the counterclaim is held improperly joined and a new trial is granted in consequence, the cause of action set out in the counterclaim will be barred by the statute.

V. In the case of *Frank Co.* v. *Motley Co.* (Tex.) 37 S. W. 868, plaintiff sued for goods sold defendant between September 20, 1894 and December 20, 1894. Defendant counterclaimed for unliquidated damages alleged to have grown out of a sale of merchandise consummated May, 1893. The two transactions were wholly independent of each other. The court: "We do not believe that a general demurrer was sufficient to cause the plea or cross action to be stricken out. There can be no objection to such cross demand being allowed in a suit on a liquidated claim if the plaintiff be satisfied to have it heard and determined. The statute was enacted for the benefit of the plaintiff, and he may waive it as one may waive the statute of limitations. The last-named statute cannot be invoked by means of a general demurrer, nor, in our opinion, can the statute under consideration. There was no special demurrer raising this objection to this answer. In all the reported cases which we have been able to find on this subject there were special demurrers. The general demurrer simply addressed itself to the sufficiency of the answer as a pleading."

VI. The point that the counterclaim is illegal cannot be raised as an error occurring at the trial, because it was never

excepted to on the trial, and because a careful examination of the specifications of error attached to the statement on motion for new trial fails to show that the alleged illegality of the counterclaim was ever assigned as error. And whether a demurrer to said answer or a motion to strike out said counterclaim would have been sustained, had it been properly presented, cannot now be considered. However well founded the objection may be it cannot be considered for the reason that it is not specified as error in the statement on motion for new trial. The Nevada statute says (Stats. 1893, p. 89): "When the notice designates, as the ground of the motion, error in law occurring at the trial and excepted to by the moving party, the statement shall specify the particular errors upon which the party will rely. If no specifications be made, the statement shall be disregarded." (*Boynton* v. *Longley*, 19 Nev. 69; *Sherman* v. *Shaw*, 9 Nev. 151; *Beans* v. *Emanuelli*, 36 Cal. 118–121; *Hilborn* v. *Irrigation Ditch Co.*, 76 Cal. 8–9; *Williams* v. *Chicago Ry. Co.*, 34 Am. St. R. 403–417; *Hawkins* v. *Abbott*, 40 Cal. 639–641; *Bagnall* v. *Roach*, 76 Cal. 106–7; *Clark* v. *Lyon Co.*, 8 Nev. 182–190; *Crowther* v. *Rowlandson*, 27 Cal. 377–385; *Crosett* v. *Whalen*, 44 Cal. 200–203; *Cleveland Stone Co.* v. *Monroe Co.*, 39 N. E. 172 (Ind.); *Alpers* v. *Hunt*, 80 Cal. 81; *McWilliams* v. *Herschman*, 5 Nev. 263–5; *Kehoe* v. *Allen*, 31 Am. St. R. 609 (Mich.); *Hutton* v. *Reed*, 25 Cal. 487.) In *Sherman* v. *Shaw*, this court says: "The objection urged against the ruling of the court in not striking out the testimony of the witness, Boutin, will not be considered, because it is not specified in the assignment of errors. The assignment of 'error of the court in admitting the testimony excepted to by the defendants' as contained in the statement, is entirely too general. The appellant must specify the *particular* errors upon which he relies: 'If no such specification be made, the statement shall be disregarded.' (Stats. 1869, 227, sec. 197; *Corbett* v. *Job*, 5 Nev. 260.)"

VII. It is harmless error to refuse to strike out irrelevant or redundant matter in the pleading. (*Lake Erie & W. R. Co.* v. *Juday*, 49 N. E. 843–848.) A motion to strike out matter in an answer must be denied if any part of the matter attacked is good. (*Gilbert* v. *Loberg* (Wis.) 57 N. W.

982; *Du Clos* v. *Bacheler* (Wash.) 49 Pac. 483; *Jarvis* v. *McBride*, 18 Wis. 316.)

VIII. The illegality of a counterclaim can be considered only on appeal from judgment, not on appeal from an order denying new trial. The misjoinder of a counterclaim is an error occurring not at the trial, but before the trial. It is not an insufficiency of the evidence to justify the verdict, it is not a verdict against law, it is simply an error in the pleadings. It is only those errors in law occurring at the trial which can be considered. (Hayne on New Trial and Appeal, p. 24, 282–283; *Jacks* v. *Buell*, 47 Cal. 162; *Mason* v. *Austin*, 46 Cal. 387; *Heilbron* v. *Irrigation Ditch Co.*, 76 Cal. 8–9.)

IX. If the evidence introduced on the trial was sufficient to support the verdict, whether it was admitted properly or improperly, the plaintiff cannot have a new trial on the ground that the evidence was insufficient to support the verdict. The jury were bound to weigh all the testimony which was admitted, under the instructions of the court. In determining, on motion for new trial, whether the evidence was sufficient to support the verdict, the court cannot disregard any evidence which was before the jury. Full weight must be given to the testimony which would have been excluded if objection had been made. (Hayne on New Trial and Appeal, sec. 98; *McCloud* v. *O'Neil*, 16 Cal. 392; *Watt* v. *Nev. Cen. R. R. Co.*, 23 Nev. 163.)

X. The phrase "the verdict is against law" does not apply to insufficient evidence to defective pleadings, or to other alleged errors which counsel have carelessly or negligently failed to present in the manner pointed out by the statute. (Hayne on New Trial and Appeal, sec. 99; *Brumagin* v. *Bradshaw*, 39 Cal. 33–35; *Murry* v. *Heinze* (Mont.) 42 Pac. 1057; *Drexel* v. *Daniels*, 68 N. W. 399; *Bauder* v. *Schamber*, 63 N. W. 227, 7 S. D. 54; *Declez* v. *Save*, 71 Cal. 552; *Emerson* v. *County of Santa Clara*, 40 Cal. 545: *Valerious* v. *Richards*, 59 N. W. 534.)

XI. There can be no question but what the defendant's cause of action arose out of the transaction set out in the plaintiff's complaint. Plaintiff might have restricted the transaction to the unlawful entry, but he did not do so. He filed a complaint in which there is not lacking a single aver-

ment which is necessary to the statement of a cause of action for a diversion of the waters of Pine creek. He averred an appropriation and ownership of the water mentioned both in complaint and answer. He alleges that he constructed the dams and impounded the water; that Raine opened the dams and took the water to his damage. Raine counterclaims that this water was his, and, by impounding it, Ennor deprived him of his water to his damage. In *Pelton* v. *Powell*, 71 N. W. 887, a recent Wisconsin case, it is held that, in an action for assault and battery, a claim for damages for a prior assault and battery committed by plaintiff upon defendant during the same affray arises out of the transaction set out in the complaint, and is properly pleaded as a counterclaim. If no counterclaim had been set up by Raine, it would be difficult to exclude any of the testimony offered by him as being irrelevant or not tending to establish the issues made by the answer. The same testimony which was required to support the answer was required to support the counterclaim; and *vice versa*. The only possible exception might be the amount of the damages suffered by Raine, and even that might be relevant as showing his need of and beneficial use of the water. It is eminently proper that the whole matter should be raised in one suit.

XII. The subject of the action is not the transaction set out in the complaint; neither is it the cause of action set out in the complaint; but it is the water. It is hardly possible that the legislators, in the section relating to counterclaims, intended that the terms "transaction," "subject of the action," and "cause of action" should be synonymous. Bliss, in his work on Pleadings, sec. 126, says the subject of the action "is that in regard to which the action is brought." In an action for tort, the subject of the action would be "that right, interest, or property which has been affected." The right to use the water held in the dam was certainly the right affected, because defendant made no claim to the Ennor ranch, the ditches or dams thereon, but he did claim this water and the right to use the same. Plaintiff alleges that he impounded and appropriated this water for beneficial purposes, that he needed it, that it was taken by defendant, and that he suffered loss thereby. (Bliss, Code Pleadings,

sec. 126; Maxwell, Code Pleadings, pp. 543–544–545; *Lepham* v. *Osborne*, 20 Nev. 168–171; *Mfg. Co.* v. *Hall*, 61 N. Y. 277; *Carpenter* v. *Ins. Co.*, 22 Hun, 52; *Gilbert* v. *Loberg* (Wis.) 57 N. W. 982: *Stillwell* v. *Duncan*, 44 S. W. 357; *Davidson* v. *Wheeler*, 22 Atl. 1022; Pomeroy, Code Remedies; *Knile* v. *Moraland*, 31 N. Y. St. 6; *Deagan* v. *Weeks*, 73 N. Y. St. 641; *Thompson* v. *Sanders*, 118 N. Y. 252; *Heigle* v. *Willis*, 50 Hun, 588.)

XIII. The specifications of error are insufficient. It is the office of the specifications of error to select out of the alleged errors those upon which it is the purpose of the party to finally rely in support of the motion. There must be a particular pointing out and specifications of the errors relied on, otherwise they will be disregarded, (Stats. Nev. 1893, p. 89; *Sherman* v. *Shaw*, 9 Nev. 151; *People* v. *C. P. R. R. Co.*, 43 Cal. 398–423; *Carleton* v. *Townsend*, 28 Cal. 219–221; *Caldwell* v. *Greeley*, 5 Nev. 260; *McWilliams* v. *Herschman*, 5 Nev. 265; *Hutton* v. *Reed*, 25 Cal. 487; *Gardner* v. *Gardner*, 23 Nev. 214; *Boynton* v. *Longley*, 19 Nev. 69.) The rule which is set out in the above cases is clearly applicable to the above specifications. The errors have not been particularly pointed out, and cannot be considered.

XIV. In order to reserve an exception on the ruling of the trial court in excluding testimony, there must be a pertinent question propounded, and upon objection thereto, the offer may be made, stating the testimony which the witness will give if permitted to answer the question. (*Kearn* v. *Bridwell*, 12 Am. St. Rep. 411; *First Nat. Bank* v. *Stanley*, 30 N. E. 799–802; *Tobin* v. *Young*, 24 N. E. 121–123; *Carpenter* v. *Willey*, 26 Atl. 488–490.) Again, the testimony offered was not sufficiently full to show that it was material or relevant; there was no offer to show that defendant had ever used the waters of Pine creek adversely to plaintiff or under claim of right, or that defendant had ever been deprived of the waters of Pine creek or of any portions thereof, to which he (defendant) claimed title by any acts of plaintiff. And without such a showing, plaintiff could have no right to the waters of Pine creek by adverse uses as against defendant. (*Lucy* v. *Wilkins*, 33 Minn. 441.)

XV.  Again, plaintiff contends that the court erred in refusing to allow plaintiff to prove in rebuttal, or to reopen the case for the purpose of proving his prior right by prescription or otherwise to the waters of Pine creek. . The great trouble with this point is that it is based on no assignment of error in the statement on motion for new trial. Plaintiff did not assign as error the ruling of the court in refusing to permit him to reopen the case.  See cases cited elsewhere in this brief on the point that no error can be considered on motion for new trial or appeal, unless specifically assigned as error in the specifications of error in the statement.  Plaintiff never offered to show ownership or adverse use of the waters of Pine creek.  The rejection of the offered testimony did plaintiff no harm.

XVI.  Plaintiff's specifications of error from 7 to 18, inclusive, relate to alleged errors in the instructions.  If there is any part of the charge to the jury which is erroneous as to the plaintiff, he cannot avail himself of it by exception taken on the trial.  Appellant's attempted exceptions are as follows: "The plaintiff then offered to the court twelve instructions to the jury, numbered, respectively, 1 to 12. The court gave to the jury the second and fifth of said instructions, and refused all the other instructions offered by the plaintiff.  The plaintiff excepted to the refusal by the court of the ten of his said instructions which were not given by the court to the jury.  And again the court then gave to the jury each and every one of the defendant's instructions to the jury, to the giving of each of which to the jury the plaintiff then and there excepted.  No other exception was taken to the instructions, "and the point of the exception was not stated as required by the rule, stated in *McGurn* v. *McInnis*, 24 Nev. 373, and Compiled Laws of Nevada, 3286. These objections are not specific.  They do not point out the several parts of the charge which are questioned so that the court may have an opportunity to make the proper and necessary corrections.  No specifications were given, nothing was said in the way of calling the attention of the court to any portion of the charge to which plaintiff excepted.  In several of the instructions there are two or more different propositions, and a general exception to such an instruction

would be insufficient if any of the propositions were correct.
A general exception to an entire charge where a portion is
correct is insufficient. (*Paul* v. *Cragnaz*, 25 Nev. 311; *McGurn*
v. *McInnis*, 24 Nev. 373; *Burton* v. *The West Jersey Ferry
Co.*, 114 U. S. 474; *Conn. Mut. Life Ins. Co.* v. *Union Trust
Co.*, 112 U. S.; *Beckwith* v. *Bean*, 98 U. S. 266; *Beaver* v.
*Taylor*, 93 U. S. 46; *Welcome* v. *Mitchell*, 29 Am. St. R. 913–
915; *Holman* v. *Security Co.* (Colo.) 45 Pac. 519–522; *Hart*
v. *R. R. Co.*, 59 Am. Dec. 447; *Haggart* v. *Morgan*, 55 Am.
Dec. 350–354; *Hunt* v. *King* (Iowa) 66 N. W. 69–71; *Litchy*
v. *Tannatt*, 39 Pac. 260; *Carter* v. *Carter*, 50 Pac. 948;
*Crosby* v. *Wilson*, 36 Pac. 985.) In Iowa it has been held
that an exception to all the instructions in a mass raises no
question for the consideration of the supreme court. (*Pitt-
man* v. *Mossberry*, 49 Iowa, 359; *McCaleb* v. *Smith*, 24 Iowa,
591.)

XVII. The statute of Nevada declares that anything
which is an obstruction to the free use of property, so as to
interfere with the comfortable enjoyment of the same, is a
nuisance. (Gen. Stats. Nev. sec. 3346.) In *Brown* v. *Per-
kins*, 12 Gray, 101, the court says: "The true theory of
abatement of nuisances is that an individual citizen may
abate a private nuisance injurious to him when he could also
bring an action." In Gould on Waters occurs the following:
"A person specially injured by a nuisance may lawfully
enter upon the premises of another who maintains it, for the
purpose of abating it, or of removing the obstruction which
is the cause of the injury, when this can be done without a
breach of the peace." Under this rule a dam, which causes
the water to flow back to unreasonable extent, may be
removed, so far as necessary, by an upper appropriator
whose land is thereby overflowed without his license, and an
obstruction to the free flow of the water to or from a mill
may be removed; an artificial channel through which the
water is unlawfully diverted may be filled up. (*Prescott* v.
*White*, 32 Am. Dec. 266; *Colburn* v. *Richards*, 7 Am. Dec.
160; 3 Blackstone Com. 220; Kinney on Irrigation, sec. 243.)

XVIII. The jury were instructed that Raine was entitled
to take the water which was rightfully his and which he
then actually needed. The jury could not have failed to

understand that the actual present need of the appropriator is a most important element in determining his rights. .

XIX. It is respectfully submitted that not only has apellant waived the alleged misjoinder of the counterclaim, but there is no heading or assignment in the notice of motion for new trial or the assignment of errors under which such an objection could be considered. A misjoinder of counterclaim is an error in the pleadings which should properly be taken up by appeal from the judgment, but there is, and at this time can be, no appeal from the judgment. It is not a verdict against law, because there is no intimation that the jury failed to obey the instructions of the court. It is not a verdict which is unsupported by the evidence, because the court, on deciding the sufficiency of the evidence, must consider all the testimony in the case, whether properly or improperly admitted, and there is no suggestion that the testimony is not sufficient to sustain the verdict. It is not an error in law occurring at the trial and duly excepted to, because no exception of any kind was taken to the counterclaim. On the fact that appellant has waived the alleged misjoinder of the counterclaim, and the ruling in *McGurn* v. *McInnis*, 24 Nev. 373, it is respectfully submitted that the judgment should be affirmed.

*Bigelow & Dorsey*, for Appellant, in reply:

I. We have already said that, where the verdict is "against the law," the particulars wherein it is against law need not be specified. Counsel for respondent seems to confound subdivision 7 with subdivision 6 of section 3290, Compiled Laws, and accordingly quotes from the Statutes of 1893, p. 89, relating to motions for new trial under subdivision 7, which is as follows: "When the notice designates, as the ground of the motion, error in law occurring at the trial, and excepted to by the moving party, the statement shall specify the particular errors upon which the party will rely." Let it stand admitted that the party moving for a new trial, so far as he relies upon "errors in law occurring at the trial," must have excepted to such error, and must specify in his statement the particular errors upon which he will rely on his motion; but what has that to do with a case

where a motion is made under subdivision 6, upon the ground that the verdict is against the law? Section 3217, General Statutes, provides that the verdict shall be vacated and a new trial granted on the application of the party aggrieved for: "Sixth—Insufficiency of the evidence to justify the verdict or other decision, or that it is against the law." Nowhere in the statute is it required that any particular specifications shall be made when the motion for a new trial is upon the ground that the verdict is against the law; not even a statement, and much less a specification, is necessary when the error complained of—that the verdict is against the law—appears upon the face of the judgment roll, or the record before the court. The statute does not require the notice of intention to move for a new trial to state upon what it will be based, or to do more than "designate generally the grounds upon which the motion will be made." (See Stats. 1893, p. 88.) In this respect our statutes differ from the California statutes. See section 658, C. C. P., which does require the notice to state upon what the motion will be based. Counsel overlooks the difference between Nevada and California statutes, or he would not rely upon California decisions rendered upon a statute prescribing a different procedure.

II. It does seem as though counsel is hard pressed for a foundation or premises from which to argue when he says, on page 3 of his brief: "It will be observed that there is no reference (meaning in the notice of intention to move for a new trial) whatever to the pleadings, to the minutes, or to the offers to prove, which the plaintiff seeks to refer to." It is never necessary to refer to a record of which the court must take judicial notice, and which he is required by express law to examine *sua sponte.* The statute in relation to the motions for new trials, both in its original form, and as amended in 1893, which counsel had before him and quoted from when he wrote his brief, provides: "On the argument, reference may also be made to the pleading, depositions, and documentary evidence on file, testimony taken and written out by a short-hand reporter authorized to make same, and minutes of the court." Such references to the pleadings is necessary for the purpose of ascertaining

the issues in the case, and determining the correctness of
the court's rulings upon objection to the evidence upon the
ground that it was irrelevant, or not within the issues; and
whether the complaint, or counterclaim is sufficient to sup-
port the verdict or judgment; and, consequently, whether
the verdict or judgment is against the law. But in addition
to the express authority of the statute to refer to the plead-
ings on the hearing of the motion, we have the written stipu-
lation of the parties on file herein and in terms made a part
of the record, dated August 29, 1898, which provides:
"That on Saturday, the 30th day of August, 1898, at 4
o'clock p. m. of said day, at the courtroom of said court, in
the courthouse, in the town of Eureka and State of Nevada,
the said motion of the plaintiff for a new trial herein shall
be called for a hearing, and all the pleadings, deeds and other
documentary evidence on file, and minutes of the court in,
of and relating to the said cause hereinafter specifically
mentioned shall be deemed there referred to and read, and
shall constitute without further statement the papers to be
used on said motion and on appeal from the order granting
or refusing a new trial." The stipulation then proceeds to
enumerate the documents and exhibits. In short, we may
say that, although the district court is empowered by the
statute to try and determine the counterclaims, it can only
exercise such power in the class sanctioned and permitted by
the statute. The jurisdiction of a court to take cognizance
of and decide a counterclaim cannot be arbitrarily exercised,
nor exercised at all save within the power and limitations of
that jurisdiction. The record here shows that the action of
the plaintiff is in *quare clausum fregit*—to recover damages
for breaking into plaintiff's close and incidentally destroying
his property. It also shows that defendant's counterclaim
seeks affirmative flow of defendant's water. This being a
proceeding not according to the course of the common law, to
be exercised under the conditions and in the special man-
ner prescribed by the statute, no presumption of jurisdiction
arises, the court being, as we have shown, *quoad hoc*, one of
special or inferior jurisdiction wherein the record must affirm-
atively show compliance with the statute. But even if this
were not so, the result would be the same, because all presump-

tions are overthrown, whatever they may be, by showing that
the record states the facts, and such facts are insufficient to
give the court jurisdiction, or jurisdiction is negatived by
the record. (*Elliott* v. *Piersol*, 1 Pet. 328; *Hickey* v. *Stew-
art*, 3 How. 750; *Galpin* v. *Page*, 18 Wall. 350; *Settlemeir* v.
*Sullivan*, 97 U. S. 449; *Moore* v. *Edgefield*, 32 Fed. 50;
*Whitwell* v. *Barbier*, 7 Cal. 54; *Falkner* v. *Christian*, 51
Ala. 459; *Pioneer, etc.* v. *Maddux*, 109 Cal. 540; *Harris* v.
*Hardeman*, 14 How. 344; *Justin* v. *Gaunt*, 4 Or. 305; *Green-
street* v. *Thornton*, 60 Ark. 374; *Richards* v. *Ladd*, 6 Sawy.
40; *Hahn* v. *Kelly*, 34 Cal. 402; *Davidson* v. *Clark*, 7 Mont.
101; *Morey* v. *Morey*, 27 Minn. 267; *Davis* v. *Hudson*, 29
Minn. 27; *Stuyvesant* v. *Weil*, 41 N. Y. App. Div. 551; *Free-
man* v. *Thompson*, 53 Mo. 183; *Law* v. *Grommes*, 158 Ill. 492;
*Clark* v. *Thompson*, 47 Ill. 26; *Wall* v. *Wall*, 123 Pa. St.
545; *Withers* v. *Patterson*, 27 Tex. 501; and numerous other
cases cited on page 1077 of 2d ed. Am. & Eng. Ency. of
Law.) Where did the court in the case at the bar find its
authority to render the judgment complained of? Upon
what authority, or established mode of procedure, is the ver-
dict of the jury based? Inasmuch as the counterclaim under
consideration neither arose out of the transaction set forth
in plaintiff's complaint as the foundation for his action, nor
was connected with the subject of plaintiff's action, it was
without authority of law. The defendant had no right to
file it, and the court had no power to consider it. The stat-
ute is the grant and measure of the defendant's rights, and
the source and limitation of the court's power. In short, it
is jurisdictional. Supposing this state of facts: A agrees
to sell to B certain land. He refuses to make conveyance.
A quarrel ensues and B strikes A. A thereupon sues B for
assault and battery. B counterclaims for specific perform-
ance of the contract of sale and purchase. The "transaction"
set forth in A's complaint would be the assault and battery—
*trespass vi et armis.* B would claim the assault arose out of
A's refusal to make his deed to the land, and that the land
is subject of the action—just as counsel for the respondent
here claims that the respondent's entry was occasioned by
the appellant's interference with the water, and that, there-
fore, the water is the subject of the action. But is it not

evident that the "transaction" in A's case is the assault and battery, and the "transaction" in B's counterclaim is made up of the facts constituting A's agreement to sell the land, *i. e.*, the contract—for a contract is a transaction, but a transaction is not necessarily a contract? (*Roberts* v. *Donovan*, 70 Cal. 113.) The situation supposed is precisely similar to the one under consideration, and is precisely the case which Justice Field, in *Winsor* v. *McVeigh*, decides does not give the court jurisdiction. Justice Field says, and he is supported by this court, and the others we have cited, that all courts are limited to particular modes of administering relief, and have no power to transcend, in the extent or character of their judgment, the law which is applicable to the particular case.

III. It is no answer to say, as we have shown, that the district court has jurisdiction over suits involving the appropriation of water. It does have such jurisdiction when invoked in the manner provided by the law, and it does not have such jurisdiction unless it is acquired according to the mode governing the particular case. Nobody will dispute that the district court has general jurisdiction to try, convict, and execute a murderer. But where can be found the lawyer who has the temerity to assert that in Nevada a man accused of murder may be tried upon an information? Why not? The court has jurisdiction over the offense, and has the accused before it. Why cannot a jury try, convict, and sentence a person charged with felony without the intervention of a jury? Why cannot the state, in an action against it by one of its property owners for breach of contract, counterclaim for unpaid taxes, or for contempt of one of its courts? The reason is plain and unanswerable. It is because the court must proceed according to the established mode of procedure governing each class of cases. It is because the court is not authorized to exert its power in that way. The invalidity of the counterclaim is not waived for the further reason that it does not state facts sufficient to constitute cause of action. If no demurrer be interposed it makes no essential difference, since the defect goes to the sufficiency of the statement of facts to constitute a cause of action, and such defect cannot be waived by a failure to

demur; it cannot be cured by the verdict. Such a complaint will not sustain a judgment. (*Barron* v. *Frink*, 30 Cal. 486–489; *Frisch* v. *Caler*, 21 Cal. 73; *Hallock* v. *Jauden*, 34 Cal. 173; *Richards* v. *Travelers' Ins. Co.*, 80 Cal. 506; *Curtis* v. *Bachman*, 84 Cal. 216; *Du Brutz* v. *Jessup*, 70 Cal. 78; *Ryan* v. *Halliday*, 110 Cal. 335; *Hurley* v. *Ryan*, 119 Cal. 72; *Richards* v. *Land Co.*, 115 Cal. 643; *Dodge* v. *Kimple*, 121 Cal. 581; *Van Valen* v. *Lapham*, 13 How. Pr. 245; *Harris* v. *Harris*, 10 Wis. 467; *Territory* v. *Virginia Co.*, 2 Mont. 101; *Wheeler* v. *Floral Mill and Min. Co.*, 9 Nev. 254, 258; *Marshall* v. *Golden Fleece Min. Co.*, 16 Nev. 177; *Bartler* v. *Crozier*, 17 Johns. (N. Y.) 449; *Smith* v. *Curry*, 16 Ill. 149; *Moore* v. *Wade*, 8 Kans. 390; *Gould* v. *Kelly*, 10 N. H. 564; *Austin* v. *Goodrich*, 49 N. Y. 268; *Williams* v. *Hingham Co.*, 4 Pink. 345; *Hardin* v. *Emmons*, 24 Nev. 329, 334.) In *Barron* v. *Frink*, 30 Cal. 486, the court, on page 489, says: "There is no rule of law better settled than that the allegation and proofs must correspond, and though sufficient may be proved to entitle the plaintiff to recover, yet, unless the complaint contains facts constituting a cause for action, a recovery and judgment in the action cannot be sustained." A party can neither prove, nor if proven can he recover upon, a cause of action defferent from that pleaded. (*Owen* v. *Meade*, 104 Cal. 179, 182–3; *Heinlein* v. *Heilborn*, 71 Cal. 557, 563; *Noonan* v. *Nunan*, 76 Cal. 44, 48; *Daley* v. *Ruse*, 86 Cal. 115, 117, 118; *Yates* v. *James*, 89 Cal. 474, 477; *Reed* v. *Norton*, 99 Cal. 617, 619, 620; *Patterson* v. *C. & G. T. Ry.*, 49 Mich. 184, 186, 189; *Luce* v. *Foster*, 42 Neb. 818; *Gage* v. *Curtis*, 122 Ill. 520.) As we have shown, it is no answer to say that the pleading is supported by the proofs if the pleading itself is unauthorized. In such cases the allegations of such unauthorized pleadings are irrelevant and immaterial, and consequently any finding based upon them is outside the issue.

IV.   We submit that upon principle, because a counterclaim is a creature of the law and exists only by the virtue of statutory law (22 Am. & Eng. Ency of Law, 1st ed. p. 373), under the conditions and limitations of section 3142 of the Compiled Laws and under the decision we referred to, it can make no difference how or when the objection we argue is

made. If a complaint or counterclaim is filed in a cause which sets forth facts not authorized by law, such facts are not in the case; they are irrelevant; they are immaterial; they are surplusage; they are nothing; they may go unheeded. They are not facts at all, legally considered. They will not support a verdict nor sustain a judgment because they are not sufficient to constitute a cause of action. The cause of action set up in the respondent's counterclaim neither arose out of the transaction set forth in the appellant's complaint, nor is it "connected" with the subject of plaintiff's action, according to the provisions of section 3142 of our Compiled Laws; therefore it did not state facts sufficient to constitute a substantive, affirmative cause of action in favor of the appellant to be tried and determined as a counterclaim, or to vest the court with jurisdiction to try the issues it created. For these reasons it could not form basis of a judgment in appellant's favor, even if the allegations of fact constituting it had been expressly admitted to be true, or, being put in the issue, had been found by a jury in favor of appellant. If the facts alleged as a counterclaim, admitting them to be true, do not constitute a cause of action which can be made available in that action, it must be rejected. And to same effect are *Barron* v. *Frink,* 30 Cal. 486; *Territory* v. *Virginia Road Co.,* 2 Mont. 96, 100; *Harris* v. *Harris,* 10 Wis. 412; and other cases cited on page 30 of this brief. A counterclaim, as we have seen, is more than an answer, and differs from a mere defense. It is a substantive, affirmative cause of action in favor of the defendant, which, in case of tort, is only permitted when it arises either out of the transaction set forth as the foundation of the plaintiff's claim, or is connected with the subject of the plaintiff's action. That is to say, there are, in effect, two causes of action before the court in the same suit, both arising out of the same transaction, or, at least, that of the defendant being connected with the subject of the plaintiff's action. Each party claims affirmative relief against the other. Both parties are, in a sense, plaintiffs and both defendants. The answer containing the counterclaim is, in pleadings, treated like a complaint. Each party claims affirmative relief against the other. (Pomeroy's Code Remedies, sec. 738.)

V. The transaction set forth in plaintiff's complaint is
"that which was done" (Webster's Dict.) by the defendant.
It was, specifically, that act of the defendant which the plain-
tiff complained of as affecting and infringing his legal rights.
It was unlawfully breaking his close, and injuring his lands
and crops. The complaint purports to give a history of one
occurrence, and no more. The history embraces what was
done on the occasion referred to. What was then done was
the "transaction" set forth in complaint as the foundation
of the plaintiff's claim. The transaction alleged in the com-
plaint is "the defendant unlawfully, maliciously, and with
force and violence entered into and upon said ranch, and
unlawfully and maliciously, with force and violence, broke
down and destroyed small dams." Certainly the respond-
ent's cause of action, if he has any, did not arise out of that
transaction; it did not arise out of his own entry upon the
plaintiff's premises. In the case at bar the "transaction"
set forth as the foundation of appellant's claim was the
illegal entry of respondent. Is it necessary for us to argue
that the respondent's cause of action, as set forth in his
counterclaim, did not arise out of his own trespass—the
"transaction" complained of by the appellant? Is it not
clear that whatever the appellant did in relation to the
obstruction of water preceded what the respondent did? If
it is really true that the appellant impounded water to which
the respondent had a right, he must have done so before the
respondent entered appellant's premises. Manifestly this is
true, or there would have been no nuisance already created
or maintained for the respondent to abate. In fact, the
counterclaim shows that the appellant's dams were built and
the flow of the water interfered with weeks before the defend-
ant took the law in his own hands and redressed his own
alleged wrongs. In short, the appellant obstructed the
respondent's water (assuming he did). That was one trans-
action. The respondent afterward entered the appellant's
close to remove the obstruction. That was another trans-
action. It is true that if the appellant had not built his
dams, the respondent would not have cut them; if the appel-
lant had not held back the water, the respondent would not,
because he could not have flooded his lands and destroyed

his crops with it.   In a word, it may stand admitted that the
"transaction" complained of by respondent in his counter-
claim—the obstruction of the water—led to or was the cause
of "transaction" complained of by the appellant—respond-
ent's trespass, but it never can be said that the obstruction
arose out of the entry; that the transaction complained of
by the appellant arose out of—that is, it resulted from—the
transaction complained of by the respondent.   Appellant's
cause of action had its origin in—it resulted from—the
respondent's entry, his alleged trespass.   The respondent's
cause of action, his countercomplaint was based upon—it
arose out of and resulted from—the alleged interference
with the flow of Pine creek by appellant.   Those two "trans-
actions," those two "matters or affairs," those two "acts or
events," those two "facts or circumstances," were independ-
ent, distinct, and disconnected invasions by each, upon the
alleged rights of the other.   (*Mulberger* v. *Koenig*, 62 Wis.
563–4; *Marks* v. *Tomkins*, 27 Pac. 6.)

VI.   There is but one further test of the validity of the
counterclaim left:   Does it fall within the second class in
the first subdivision of section 3142?   The statute authorizes
a counterclaim which arises out of a cause of action which is
connected with the "subject of the action."   What is the
meaning of the phrase "subject of the action"?   In actions
arising in contract it is comparatively simple to determine
what constitutes the subject of the action.   It is more diffi-
cult in actions sounding in tort.   Counsel for respondent, on
page 32 of his brief, affirms that Bliss, in his work on Code
Pleadings, at page 126, says the subject of the action "is that
in regard to which the action is brought."   This is mislead-
ing, because it was not intended by Mr. Bliss to cover
cases of tort.   What the author does say in that connection
is:   "In an action to recover the possession of land, the sub-
ject, or that in regard to which the action is brought, is the
land."   Of course the land is the subject of an action to
recover its possession, and so would chestnuts be the subject
of an action to recover their possession, but there can be
nothing more stale, flat and unprofitable than their intro-
duction to a case not brought for that purpose.   However, if
in an action to recover the possession of land the land is the

subject of the action, so, for the same reason, will water be the subject of an action brought to obtain its use, or ascertain its priority as to appropriation. In other words, as is said by Bliss on Code Pleadings, page 126, it is the "matter or thing concerning which the controversy has arisen." When it is said that the rights of several parties to plead a counterclaim must be reciprocal, it is of course meant that if the defendant relied on the facts stated in his counterclaim, the plaintiff could have counterclaimed by setting up the facts alleged in his complaint. Now, considered by this test, if Raine, as prior appropriator, had sued Ennor for damages for obstructing the flow of water to his land, could Ennor have counterclaimed by setting up Raine's trespass upon Ennor's lands? Clearly not, because Ennor's interference with the water—the transaction complained of—did not arise out of Raine's trespass, nor would Raine's trespass—his invasion of Ennor's right to undisturbed possession of his lands—be connected with the subject of his action, which would be the water. Evidently counsel for the respondent does not wholly approve the good republican doctrine of reciprocity. The "subject of the action" in this case was created by the plaintiff, the appellant, and not the defendant, and not by the defendant, the respondent. That subject (the action being *quare clausum fregit*) is the right of property— the right to exclusive possession—violated by the entry of respondent; and it is manifest that appellant was entitled to recover in absence of justification, even if every allegation of special or consequential damages were disproved. (*Howell* v. *Thompson*, 2 Hill (S. C.) 470; *Harris* v. *Sueeded*, 104 N. C. 369; *Harris* v. *Randolph Bank*, 60 N. E. 1025, 157 Ind. 120; *Sugden* v. *Magnolia Metal Co.*, 68 N. Y. Supp. 809, and cases there cited.)

VII. We have said that the forcible and unlawful entry of defendant constituted at once the "transaction" complained of, and the "subject" of plaintiff's action. Counsel for respondent takes issue with us, and says the courts hold otherwise. We think not, and after a careful analysis of his authorities and reëxamination of those we relied upon, we not only reaffirm that statement with great confidence, but are convinced that we have practically demonstrated its correctness.

When the character and purpose of this action are considered, we think that no other rational conclusion is possible. Any interference, however slight, which unlawfully disturbs another in the enjoyment of his property, is a trespass. (*Rand* v. *Sargent*, 23 Me. 326; 39 Am. Dec. 625.) Forcible disturbance of peaceable possession is a trespass; and an action therefor involves no question of title. To disturb a peaceable possession is a trespass irrespective of ownership. (*Newcomb* v. *Irwin*, 55 Mich. 620.) It cannot be doubted that the transaction which was the foundation of plaintiff's action was made up of the facts which constitute the trespass. The "transaction," then, was the trespass of the defendant. The "subject" of the action is, as said by Bliss (sec. 126), "the matter or thing concerning which controversy has arisen," or "that in regard to which the action is brought." The controversy arose here over the defendant's trespass. That was the thing in regard to which the action was brought. It was the plaintiff's right to exclusive possession of his land and violation of that right, or the entry of defendant, that caused the controversy, and that constituted the "subject" of the action.

VIII. The counterclaim is unauthorized, illegal—a fugitive document. It stated no cause of counterclaim, conferred no jurisdiction. It was a mistake to interpose it, to hear it, to determine it. Upon it a judgment has been entered which is without support in a valid pleading. The appellant is entitled to a new trial. The objections of the respondent are purely technical, and are unsupported by any authority applicable to the Nevada Statutes regulating pleadings, or procedure relating to new trials. The offer of certain evidence in rebuttal, tending to defeat the respondent's affirmative case, was sufficient, and the assignment under the exception is ample. If any portion of evidence is admissible, its exclusion constitutes error. (*Board of Education* v. *Keenan*, 55 Cal. 642, 647–8; *Coveny* v. *Hale*, 49 Cal. 552.)

IX. It is well settled that one who goes upon the premises of another under authority of law and does an unwarrantable act, or in any manner abuses his authority, becomes at once a trespasser *ab initio*. (26 Am. & Eng. Ency. Law, p. 598.) So that—when it is borne in mind that a party injured by

a nuisance cannot go further than he could maintain an action at law; that he must not be guilty of excess, under penalty of becoming a trespasser *ab initio*; that he acts at his peril, and is answerable for all damages when he errs in judgment, and that there must be some necessity for private abatement to justify unlicensed intrusion upon the lands of another—we submit that the court erred in sustaining the objections of defendant to the questions set out on page 89 of the statement. The questions in cross-examination of respondent which we have referred to were in relation to an absolutely proper subject of inquiry, and the jury should have been informed whether the respondent's entry was really necessary and in good faith, or whether he had ample time and opportunity to appeal to the court to redress his real or fancied wrongs, and acted arbitrarily and maliciously.

X.  Assuming, *pro hac vice*, that the question of prior right was in the case, and that respondent's several instructions were interdependent, instead of distinct, unconnected charges upon the law taken as applicable, they still do not by any means, either considered severally or as a whole, charge the jury upon the law of appropriation which measures the claimant's right to the use of water.  How could the jury know, from the instructions, that, to constitute a valid appropriation, there must be an actual diversion from the natural stream with intent to apply it to some beneficial purpose, followed by an actual application of the water to the use designed within a reasonable time, and that, when irrigation is the purpose, the right thus acquired is limited by the further rule that such appropriator is only entitled to the quantity of water necessary for the proper irrigation of his crops?  The rule is thus clearly stated in *Nevada Ditch Company* v. *Bennett*, 45 Pac. 472, where the court, on page 479, says: "Let us first get a clear idea of the elements which enter into and go to establish a valid appropriation of the waters of a public stream to a beneficial purpose.  The rule is concisely laid down by Mr. Justice Moore that, in appropriation of water, three elements must always exist: First, an intent to apply it to some beneficial use existing at the time or contemplated in the future.  Second, a diversion from a natural stream by means of a ditch, canal, or some other

structure; and, third, an application of it within a reasonable time to some useful purpose." (*Union M. & M. Co.* v. *Dangberg*, 81 Fed. 73-94-5; *Low* v. *Rizor*, 37 Pac. 82, 84; *Farmer's High Line Canal Co.* v. *Southworth*, 21 Pac. 1228; *Downing* v. *Agricultural Ditch Co.*, 39 Pac. 336, 338; *Nichols* v. *McIntosh*, 19 Colo. 22; 34 Pac. 278, 281; *Low* v. *Schiffer*, 24 Or. 239; 33 Pac. 678, 680; *Becker* v. *Marble Creek*, 15 Utah, 225; 49 Pac. 893; *Riverside* v. *Sargent*, 112 Cal. 230; *Maeris* v. *Becknell*, 7 Cal. 262; *McKinney* v. *Smith*, 21 Cal. 374.)

XI.    Where are the jury told, by any or all of the instructions, that nothing short of intent to use, a diversion from the stream, an assumption of absolute control over the flow, and an application of the water diverted to a beneficial use, constitutes appropriation? What is there to inform the jury that these principles underlie and control the whole doctrine of appropriation? The streams of the state belong to the state, subject to the right to use economically for beneficial purposes. The claimant's right is strictly usufructuary and not in any respect proprietary. In other words, the right of an appropriator is not absolute, but exists only *sub modo*. It is commensurate with his necessities, is limited by his original appropriation, and lasts only while such necessities continue, to be resumed when they arise again. It is a right intermittent in its character, ever recurring *in perpetuum.* As a man can only acquire a right to use water for beneficial purposes he cannot take more than is necessary; he cannot be "extravagantly prodigal while dealing with this peculiar bounty of nature." He is only entitled to the amount he needs when reasonably and economically used.

XII.    An appropriator cannot adopt an extravagant or wasteful system of irrigation if it is harmful to the just claims of others, or stands in the way of the progress and development of the state's resources. Paramount public policy requires a careful economy of the supply. The rule which holds that all the water of a stream not appropriated for a useful purpose is subject to needs of a second appropriator applies to the case of an appropriation for a certain period, or periods, of time. The remaining portion of the time leaves the water free for another claimant and use.

These principles are deducible from the decisions dealing
with the appropriation of water, and have been crystallized
into statute law by the legislature of Nevada. (Comp. Laws
1900, secs. 354, 356, 357; *Mattis* v. *Hosmer*, 62 Pac. 17, 19;
*Roeder* v. *Stein*, 23 Nev. 92, 96; *Gotelli* v. *Gardelli*, 26 Nev.
382, 39 Pac. 8, 9; *Medano Ditch Co.* v. *Adams*, 68 Pac. 431;
*Wiggins* v. *Muscuplabe L. & W. Co.*, 113 Cal. 195; *Stroble* v.
*Kerr Salt Co.*, 164 N. Y. 303; *Salt Lake City* v. *Salt Lake
City & Elec. Power Co.*, 67 Pac. 673, 677; Long on Irr. sec.
18, p. 36; *Harris* v. *Harrison*, 93 Cal. 676, 681, 682; *Frey* v.
*Lowden*, 70 Cal. 550, 557; *Elliott* v. *Whitmore*, 37 Pac. 461,
462; *Tolman* v. *Casey*, 13 Pac. 669, 672; *City of Salem* v.
*Salem Flouring Mill*, 7 Pac. 497, 505–506; *Smith* v. *Corbetl*,
116 Cal. 587, 592; *Jones* v. *Conn.* 64 Pac. 855, 858; *Natoma
Water & Min. Co.* v. *Hancock*, 101 Cal. 42, 49, 50; 35 Pac.
334, 336–7; *Ortman* v. *Dixon*, 13 Cal. 34; *Smith* v. *O'Hara*,
43 Cal. 376; *Santa Paula Water Works* v. *Peralta*, 113 Cal.
44; *Barnes* v. *Sabron*, 10 Nev. 217, 245; *Salina Creek Irr.
Co.* v. *Salina Stock Co.*, 7 Utah, 460; 27 Pac. 578.) In tak-
ing or saving exceptions to instructions given or to refusal
to give instructions requested, no grounds of objection or
reason for the exception need be specified; and herein the
exceptions of the appellant were sufficient.

XIII. In *Sharon* v. *Minnock*, 6 Nev. 382, cited and quoted
from by the court in *McGurn* v. *McInnis*, *supra*, the appellate
court merely recommended the well-established principle that
"a party objecting to the admission of evidence, must specify
the ground of his objection when the evidence is offered, and
will be considered as having waived all objections not so
specified." (*People* v. *Manning*, 48 Cal. 335, 338; *State* v.
*Jones*, 7 Nev. 408, 415; *Croker* v. *Carpenter*, 98 Cal. 418, 421–
422; *People* v. *Foo*, 112 Cal. 17, 21–24; *State* v. *Leehman*, 2
S. Dak. 171, 185; 49 N. W. R. 3, 7.) Or, stated in other
words, the principle is this: A party will not be permitted
to change the ground of his objection taken in the trial
court and assume another on appeal. (*People* v. *McCauley*,
45 Cal. 146, 148; *State* v. *Leehman*, 2 S. Dak. 171, 185; 49
N. W. R. 3, 7.) "He cannot change his base after an
appeal." (*Garland* v. *Whole Bass*, 20 Iowa, 271.) In fine,
the theory upon which a case is tried in the *nisi prius*

tribunal must be carried on through the court of last
resort. In this regard what is said in Elliott's Genl. Pr.
vol. I, sec. 140, is pertinent here. There the learned authors
say: "The theory upon which a cause is tried continues
until the end, even though the case goes to the court of last
resort. This rule is adhered to with great strictness. The
rule is necessary in order to secure justice by preventing
parties from shifting ground and from misleading their
opponents and the trial court." (See Elliott, Gen. Prac, secs.
87, 91.) Ency. Pl. & Prac. vol. VIII, 253, *et seq.*, deals with
exceptions to instructions given. But, at pages 256–257, the
text writer says: "This rule—that, in order to have instruc-
tions given or the failure to give them reviewed on appeal,
an exception must be saved—has been modified or altogether
abrogated by statute in some jurisdictions." (In the notes,
page 257, the writer mentions the states where the rule has
been either modified or abrogated.)

XIV. As well observed in Elliott on Appellate Pro. (sec.
827), the idea that the purpose of exception is to afford the
*nisi prius* judges an opportunity, a sort of *locus penitentiæ,*
to correct any error into which they may have fallen, is
more fanciful than real, and is not sanctioned by the experi-
ence of the bench and bar. It often happens that a motion
for a new trial is made and submitted, while not so in
terms, yet in reality *pro forma,* with the exception of seeking
recourse to the tribunal of *dernier* resort. The reports will
show a greater percentage of decisions reversing orders deny-
ing a new trial than of decisions affirming orders granting a
new trial. Indeed, it is usually understood that exceptions
are saved for the purpose of having the rulings complained
of reviewed, not by the *nisi prius* court, but by the appellate
tribunal. And such is the object accomplished where a bill
of exception is saved, and an appeal is taken thereon on the
judgment roll without moving for a new trial in the lower
court. In *Mallett* v. *Swain,* 56 Cal. 171, the court refused to
give certain instructions asked ·by the defendant's counsel.
In the language of the appellate tribunal (56 Cal. 172–173):
"The court then proceeded to give instructions; the jury
then retired, and immediately afterwards defendant's counsel
asked the court to note an exception to the refusal to give

the instructions asked. Plaintiffs objected, that the exception should have been taken before the jury retired, and the objection was sustained. This refusal to give the instructions is implied as error." "It is not necessary to pass upon the correctness of the instructions. The statute requires that an exception be taken at the time of the ruling. This was not done. It was not error, therefore, to refuse to note an exception at a subsequent time. There was ample time after the ruling, and before the jury retired, to have taken an exception." (*Garoutte* v. *Williamson*, 108 Cal. 135, 141.) The instructions of the court are the law of the case. (*Lind* v. *Closs*, 88 Cal. 6, 11.) No grounds or reasons need be assigned as the basis for an exception to a ruling or decision of the court in refusing to give an instruction, or a number of instructions, as requested by the exceptant.

XV. The cases cited by the court in *McGurn* v. *McInnis*, *supra*, do not support the doctrine claimed for it. In *Lobdell* v. *Hall*, 3 Nev. 507, there was no exception taken by either party to the giving of, or refusing to give, any instructions. In *Sharon* v. *Minnock*, 6 Nev. 382, the sufficiency of the exception there taken to the overruling of an objection to evidence was not questioned. It was only held that the exceptant could not, on appeal, rely upon the ground of objection not specified as the basis for the exception in the *nisi prius* court. In *Rosina* v. *Trowbridge*, 20 Nev. 105, while the record showed an exception, the validity of which as to form was not assailed, there was no foundation for exception, inasmuch as the record failed to show any objection to the introduction of evidence which was the matter in controversy in the appellate court.

XVI. The objection that a counterclaim does not fall within the limitations of section 3142 of the Compiled Laws, is not waived by failing to demur, or to move to strike it out, or to object to evidence under it. Its vice is inherent—jurisdiction A1, and may be shown in any court. On page 9 of his brief counsel for respondent calls attention to our statement on page 11 of our opening brief that "the objection that a counterclaim is involved is never waived; it may be taken at any time," and denies that it is sustained by a single

decision which we there cited in its support. Let us see whether it is not buttressed and upheld by both reason and authority. It is indispensable that somewhere in the law must be found authority for filing a counterclaim, and it is equally certain that there are only two sources whence the requisite authority can be derived. It must be found either in the statutes of the state, or in the common law of England. No such right existed at common law. It was not known at all before the code system. It cannot be found in any English dictionary, unless it be a very modern one. It is not found in Bouvier's Law Dictionary. Therefore the statute alone must be looked to. It is purely a statutory privilege. It is a grant of power, an enabling act, and the statute is the measure of and a limitation upon the right conferred; not only because it is a departure from an innovation upon the common law, but because it expressly grants the right on conditions prescribed. It appears, then, that the jurisdiction to hear and to determine a complaint of a plaintiff and a countercomplaint of a defendant is of statutory creation, to be exercised upon the conditions limited. It seems to be a proceeding not according to the course of the common law, but under statutory powers.

XVII. The argument of counsel for respondent is directed wholly against what he erroneously conceives to be the sole purpose of the motion and statement. He says it is only error in law occurring at the trial which can be considered, and that rulings or pleadings cannot be reviewed, save on appeal. We confess that error in law at the trial can be reviewed on a motion for a new trial, and that as to such errors the statement must contain particular specifications; but that is not the only ground of our motion, or, by any means, the most important one. We rely upon the insufficiency of the evidence to justify the verdict, and as to that our specification in the statement is ample. We also rely upon the ground that the "verdict is against the law," which is by far the most urgent and important ground of our motion, and as to such ground no specification of particulars are required. Counsel has strayed too far from the fold; he has been deceived by the teachings of foreign gods. If he had but gone prayerfully to the statute of his own state,

he would be led from the darkness into the light. So far as the grounds relating to the "insufficiency of the evidence to justify the verdict," and that the "verdict is against the law," are concerned, they are not based upon the rulings of the court on the pleadings, nor on the rulings of the court during the trial. They are founded upon the inherent invalidity of the counterclaim, and upon position that no amount of evidence based upon an irrelevant pleading can justify a verdict. In every sense we ask for a reëxamination of the issues of fact, which is the special province of motions for new trials. As the jury on the former trial found its verdict upon an unauthorized counterclaim, the real issues could not have been considered, or, if considered at all, only for the purpose of offsetting the damages claimed and established under complaint, against the damages testified to under the counterclaim, and of finding that the damages alleged in the counterclaim exceeded those stated in the complaint to the extent of $100. If the counterclaim is eliminated, a new trial means nothing more nor less than a reëxamination of legitimate issues of fact.

XVIII. The objection that the lower court had no jurisdiction to hear the case presented by the counterclaim, and that the counterclaim does not state facts sufficient to constitute a cause of action, can be raised on the appeal of the plaintiff from the order denying his motion for a new trial. As we elsewhere show, the objection that the court is without jurisdiction, and that the counterclaim does not state facts sufficient to constitute a countercomplaint, are not waived by a failure to demur. Assuredly any verdict based upon a counterclaim essentially insufficient, awarding judgment to the defendant, must be against law (*Stuart* v. *Lord*, 72 Pac. 143), reviewable on motion for a new trial, and from an appeal from the order denying the same. The offer of certain evidence in rebuttal, tending to defeat the respondent's affirmative case, was sufficient, and the assignment under the exception taken is ample. If any portion of evidence offered is admissible, its exclusion constitutes error. (*Board of Education* v. *Keenan*, 55 Cal. 642, 647–8; *Coveny* v. *Hale*, 49 Cal. 552.)

By the Court, TALBOT, J.:

We detail the principal and controlling facts stated in the pleadings because they are necessary for the proper understanding and explanation of appellant's contentions.

This action was brought by J. C. Ennor some years before his decease. In his complaint he alleged that during all the year 1896 he was the owner, in the possession, and entitled to the possession of all that parcel of land and appurtenances situated in Pine Valley, Eureka county, and known as "Ennor's Ranch"; that during all that year he owned and had constructed upon this ranch various dams and ditches, by and through which he stored and accumulated the waters of Pine creek, which during all that time flowed through and upon the ranch; that by means of these ditches he irrigated a large portion of the ranch during that time, and cultivated and induced the growth of large crops of hay; that portions of the ranch require drainage; that there is no water for the portions of the ranch which require irrigation except that which is stored and accumulated by means of these dams; that in July, 1896, and while plaintiff was the owner and in the possession of the ranch and the dams and ditches and appurtenances, the defendant unlawfully and with force and violence entered and broke down and destroyed plaintiff's dams, whereby the water which he had theretofore stored and accumulated for the purpose of irrigating his ranch was lost and wasted, and a portion of his ranch was overflowed, and the crops of hay thereon injured and destroyed; that by reason of this loss of water plaintiff was prevented from irrigating and harvesting any crops of hay upon certain other portions of his ranch—all to plaintiff's damage in the sum of $3,000, for which he asked judgment.

In his amended answer the defendant denied all these allegations, and by way of affirmative defense alleged that he and his grantors had been the owners and in the possession of the premises known as the "Raine Ranch," in Pine Valley, since May, 1868; that Pine creek is a natural surface stream of water, which, when unobstructed, flows through his land; that ever since May, 1868, except when unlawfully diverted, he and his grantors have used 700 miners' inches of

the water of this creek in the beneficial and necessary irrigation of crops growing on his ranch; that such appropriation and use was long prior to any diversion by the plaintiff; that on the 11th day of July, 1896, plaintiff entered upon Pine creek above the ditches and dams of the defendant, and by means of the dams and ditches mentioned in the complaint wrongfully obstructed the natural flow of the water and diverted the whole thereof away from the defendant's lands, and thereby deprived him of water for the irrigation of his hay, grain, and vegetables, which, for the want of such irrigation, were greatly injured, and about to become valueless; that thereupon the defendant entered upon the Ennor ranch at the time stated in the complaint, without any unnecessary injury to the same, and only to the extent needful, in order to permit such an amount of water to flow down to defendant's crops as was necessary for their irrigation.

Then "for a cause of action and as a counterclaim" against the plaintiff the amended answer repeated its foregoing allegations, and averred further that on or about the 11th day of July, 1896, the plaintiff entered upon the creek at points above the lands, dams, and ditches of the defendant, and by means of certain dams and ditches mentioned in the complaint wrongfully diverted away from the crops and lands of the defendant all the water of the creek until the 24th day of July, 1896; that by reason of such diversion defendant did not have sufficient water to irrigate his crops, which were damaged thereby to the extent of $3,000, for which sum he demanded judgment against the plaintiff.

The plaintiff objected to the filing of the amended answer, moved to strike out, and demurred on the grounds, first, that the answer, "taken altogether, is contradictory, and does not state facts sufficient to constitute a defense to the cause of action set up in the complaint; and, second, on the ground that it is ambiguous, uncertain, and unintelligible."

The trial took place in the district court in September and October, 1896, and a verdict was rendered and judgment entered in favor of the defendant for $100 damages and costs of suit. From an order denying a new trial, plaintiff has appealed to this court.

It will be perceived that no appropriation or use of the water on the Ennor ranch prior to the year 1896 is alleged in the complaint. It seems that the case was brought and tried by the plaintiff on the theory that the defendant was a trespasser when he went upon Ennor's premises, tore out the dams, and let the water flow to his crops, regardless of whether he was the prior appropriator and owner of the water, and, if it were diverted, that, instead of going after it, he ought to have applied directly to the court. On this appeal it is still urged that when defendant entered the Ennor ranch he became liable for at least nominal damages. We do not so interpret the law. Since the passage of the act of Congress of July 26, 1866, c. 262, 14 Stat. 251 [U. S. Comp. St. 1901, p. 1437], the prior appropriator is entitled to a right of way for conveying his water along its natural channel, and through ditches constructed prior to the time that other rights attached to the land traversed by these water courses. All locators, patentees, owners, and claimants whose rights are initiated after the appropriation of the water hold subject to this easement. (*Hobart* v. *Ford*, 6 Nev. 77; *Shoemaker* v. *Hatch*, 13 Nev. 261.) The defendant being the appropriator and owner of the water, as was properly alleged as a defense in the answer, and as appears to have been found by the jury, he was as much entitled to have it flow through the Ennor ranch in the natural channel, and in ditches used by him or his grantors prior to the location of that place, as through his own lands, and had as much right to remove dams and obstructions on the Ennor ranch to the extent necessary to allow his water to flow for the proper irrigation of his crops as he had to remove dams on his own ranch or obstructions in his own lane or doorway, provided he did so peaceably. It is apparent that he entered the plaintiff's ranch along the channels in which he was entitled to have the water flow, and cut the dams, with the intention of recovering the water which, under the verdict of the jury, belonged to him, and not for the purpose of committing an injury or trespass against his neighbor. Except for the water which he sought, and evidently had the right to recover, it is not to be supposed that he would have gone

there. The defendant's instructions given by the court proclaim the correct rule in this regard, and those offered by the plaintiff were properly refused.

Counsel for appellant contend most forcibly that the alleged counterclaim set up in the amended answer is not a cause of action arising out of the transaction set forth in the complaint as the foundation of the plaintiff's claim, and is not such a one as defendant is permitted to make under section 47 of our civil practice act (Comp. Laws, sec. 3142). No objection on this ground was made by demurrer, motion, against the admission of testimony, specification of error, in the statement on motion for a new trial, or otherwise in the district court. On behalf of respondent it is claimed that this objection is waived, and also that it is without merit, while appellant insists that it goes to the jurisdiction of the court, and cannot be waived, and cites many authorities holding that the objection to the jurisdiction of the court may be raised at any time. The principle of law covered by these cases is well established, and must be conceded; and, if the alleged counterclaim would have been bad on demurrer—which we think unnecessary to decide—it becomes important to determine whether it comes within the rule, and relates to a matter vital to the jurisdiction of the court, or whether it is a mere irregularity, which plaintiff waived by failing to make objection in the lower court. Much of the argument was directed to this branch of the case, but it is only important to the extent of $100, and the principle involved, for, as the jury returned a verdict for that sum, the judgment could be modified to that extent, and allowed to stand for costs, as suggested by counsel for respondent. (*Wright* v. *Cullers*, 2 Wilson, Civ. Cas. Ct. App. sec. 751.) The assertion in the opinion in *Macdougall* v. *Maguire*, 35 Cal. 280, 95 Am. Dec. 98, cited and relied upon by counsel for appellant, that such objection can be made at any time, may be considered as dictum, for the objection was raised there on the trial in the lower court, and not for the first time on appeal, as here. The alleged counterclaim avers facts on which Raine would have been entitled to recover from Ennor in a separate action. It states a demand for $3,000 damages, and facts, which, if proven, would warrant

the recovery of that sum.   Under the constitution and statute the district court, in which the answer was filed and the case tried, had jurisdiction of the subject-matter.   It was asserted in a civil action, as distinguished from a criminal one and from a probate or special proceeding, in which it could not have been properly considered.

Whether damage occasioned Raine by the stoppage of the water above by Ennor from July 11th to July 24th is closely enough allied with the retaking of the water and the ending by Raine of the diversion on the latter day—which in reality is the basis of the complaint—to sustain a counter-claim in the face of a demurrer, we need not decide, for we believe that it was a mere irregularity that could be and was waived by failing to make the objection.   ( *Caldwell* v. *Greely*, 5 Nev. 260; *Paul* v. *Cragnaz*, 25 Nev. 311, 59 Pac. 857, 60 Pac. 983, 47 L. R. A. 542.)

If it be conceded that the counterclaim would have been bad on demurrer, still, as the district court had jurisdiction of the subject-matter, we see no reason why it could not be properly tried and determined by the consent or acquiescence of the parties, under the same rule that holds that the right to object to a misjoinder of causes of action is waived by a failure to demur, and that the trial of cases between the same and different parties may be consolidated.   The practice act has to this extent modified the common-law rule that one tort cannot be set up against another, and this and the exception created by the act of Congress before mentioned to the theory that the mere entry upon the premises of another makes one liable to nominal damages tend to illustrate that, although from education and training lawyers and judges are imbued with the doctrines of the common law, and, like other people, being slaves of habit, are reluctant and slow to enforce the changes demanded by the letter and spirit of the code and statutes, the law is a progressive science, and by legislative enactment and judicial decision fits itself to meet the new conditions that arise in the affairs of men.

The rule that the right to object to a misjoinder of causes of action in a complaint and to an improper counterclaim inserted in the answer is waived is supported by abundant authority in the cases that were cited.   Short extracts from

a part of these opinions indicate how well the rule is established.

"The question whether a counterclaim was lawfully presented was not raised upon the trial, and should have been presented by demurrer, or by an objection at the trial. It cannot, therefore, be now considered." ( *Westervelt* v. *Ackley*, 62 N. Y. 508.)

"The objection was not made that liability so incurred was not the proper subject of a counterclaim. It is therefore too late to raise it now." ( *Vann* v. *Rouse*,·94 N. Y. 407.)

"Appellant now asks a reversal of the judgment on the sole ground that the so-called supplemental cross-complaint of a defendant was insufficient. But the case comes clearly within the rule that, where a case is tried upon the theory that the issues are properly joined in the trial court, and no objection or exception is taken there, it is too late to raise such objections here." ( *Kirsch* v. *Kirsch*, 83 Cal. 635, 23 Pac. 1083, approving *Hiatt* v. *Board of Trustees*, 65 Cal. 481, 4 Pac. 464; *Spiers* v. *Duane*, 54 Cal. 176; *Cave* v. *Crafts*, 53 Cal. 141; *Van Maren* v. *Johnson*, 15 Cal. 313.)

"The cause of action alleged in the answer, being in no way connected with the subject of plaintiffs' action, was not proper matter of counterclaim. But the only way to make the objection that a cause of action alleged as a counterclaim is not the proper subject of counterclaim in the particular action is by demurrer. If plaintiff omits to demur on that ground, and takes issue upon the facts alleged, he waives his objection to the character of the cause of action, and consents that it may be tried and determined as if it were proper to plead it as a counterclaim." ( *Walker* v. *Johnson*, 28 Minn. 149, 9 N. W. 632.)

"The plea does not show any connections between the two transactions, and it is manifest from its allegations that they were wholly independent of each other. We do not believe that a general demurrer was sufficient to cause the plea or cross-action to be stricken out. There can be no objection to such cross-demand being allowed in a suit on a liquidated claim if the plaintiff be satisfied to have it heard and determined. The statute was enacted for the benefit of the plaintiff, and he may waive it as one may waive the statute

of limitations." (*A. B. Frank Co.* v. *A. H. Motley Co.* (Tex. Civ. App.) 37 S. W. 868.)

"The provision of the statute against a set-off of a claim on contract against a recovery on a tort does not apply where there is no objection by the parties or judge to the pleading of a set-off." (Syllabus, *Gillett* v. *Moody* (Tex. Civ. App.) 54 S. W. 35.)

"But, even if the counterclaim were an improper one, the defendant waived the objection by not demurring to the answer. It was said in *Parker* v. *Wiggins*, 10 Kan. 425, that the plaintiff, instead of availing himself of a bar to the action on the counterclaim, preferred to risk a hearing upon the merits; but the courts properly held that that point had been waived by neglecting to interpose it as a defense at the proper time. Such a defense, not being upon the merits, is called 'dilatory,' and its indulgence, except at the first favorable opportunity, is not favored in law. This point has been decided in *Zabriskie* v. *Smith*, 13 N. Y. 322, 64 Am. Dec. 551, and in *Merritt* v. *Walsh*, 32 N. Y. 689, so far as the same is applicable to a petition, and we think the same rules are applicable to a counterclaim set up by way of answer that govern a demurrer to a petition." (*Wyman* v. *Herard* (Okl.) 59 Pac. 1018.)

"This additional count, however, it is contended, is in form *ex delicto*, which could not be joined with the original count on the same cause of action, which was *ex contractu*. But whether it was subject to that criticism or not it is unnecessary to decide, even if such misjoinder existed, since there was no objection raised for its alleged misjoinder with the others." (*Richmond & D. R. Co.* v. *Jones* (Ala.) 14 South. 786.)

"The district court had jurisdiction of both causes of action, and we must presume that plaintiff in error was satisfied to have them joined. This court will not notice alleged errors to which no exception was taken in the trial court. (*Pettit* v. *Black*, 13 Neb. 142, 12 N. W. 841; *Dutcher* v. *State*, 16 Neb. 30, 19 N. W. 612; *Warrick* v. *Rounds*, 17 Neb. 411, 22 N. W. 785.)" (*First Nat. Bank of North Bend* v. *Miltonberger* (Neb.) 51 N. W. 232.)

"It is equally well settled that the question of the proper

subject of counterclaim must be raised by demurrer, or it will be deemed waived. ( *Walker* v. *Johnson*, 28 Minn. 147, 9 N. W. 632; *Boom Co.* v. *Prince*, 34 Minn. 71, 24 N. W. 344.)" ( *Talty* v. *Torling* (Minn.) 82 N. W. 632.)

"It can require no argument to show that this so-called 'counterclaim' had no proper place in the case, and ought not to have been allowed to remain in it, had it been properly and seasonably objected to. The proper way to raise the question whether the cause of action is the subject of counterclaim is by demurrer. ( *Campbell* v. *Jones*, 25 Minn. 155.) By failing to demur on this ground, the plaintiff waived all objection to the answer as a counterclaim. ( *Walker* v. *Johnson*, 28 Minn. 147, 9 N. W. 632.) Counsel asks us to reconsider our former decision on this point, but, after an examination of all the authorities cited by him, we see no reason to change our views. The reasoning of the court in *Ayres* v. *O'Farrell*, 10 Bosw. 143, cited by us in *Walker* v. *Johnson*, although not the opinion of a court of last resort, strikes us as sound and convincing. We think confusion has sometimes arisen by failure to distinguish between a case where the 'counterclaim' fails to state a cause of action and a case where, although it states a good cause of action, it is one which is not the subject of counterclaim under the statute. Of course, in the first case the defect can be taken advantage of at any time, even after judgment, precisely as if it were set up in a complaint." ( *Lace* v. *Fixen*, 39 Minn. 48, 38 N. W. 762.)

It is held in *Shuster* v. *Finan*, 19 Kan. 114, *Cushing* v. *Miller*, 62 N. H. 517, and *Creager* v. *School District*, 62 Mich. 101, 28 N. W. 794, that the form of the proceeding will not invalidate it if objection is not seasonably made.

Other decisions are cited in those mentioned, and the following also are in point: *Lee* v. *Russell* (Ky.) 38 S. W 874; *McKune* v. *Santa Clara Valley Mill & Lumber Co.* (Cal) 42 Pac. 980; *Township of Noble* v. *Aasen* (N. D.) 76 N. W. 990; *Mississippi & Rum River Boom Co.* v. *Prince* (Minn.) 24 N. W. 344; *Campbell* v. *Jones*, 25 Minn. 156; *Baugh* v. *Barrett* (Iowa) 29 N. W. 426; *Puffer* v. *Lucas*, 101 N. C. 285, 7 S. E. 734; Abbott's Trial Brief (Civil) 73, note "Objections Waived," and list of cases.

If the counterclaim were beyond the jurisdiction of the district court, and the case were reversed for that reason, the plaintiff could plead the statutes of limitations effectively at this late day, if defendant brought a new action for the damages he claims to have suffered. Under such circumstances the Supreme Court of Missouri refused to examine the question of jurisdiction, then raised for the first time, and said: "We feel that gross injustice would be done should we consider the question, and determine that the original judgment was null and void for want of jurisdiction in the court to render it. If that judgment was a nullity, then the statute of limitations could be interposed against the demand." (*Boone's Admr.* v. *Shackleford's Admr.*, 66 Mo. 493.)

At the close of the defendant's testimony the plaintiff moved the court to reopen the case, and offered to prove that he and his grantors had used and enjoyed the Ennor ranch and its appurtenances since 1871 in the same manner that he had done in 1896. It will be noticed that the proffered testimony had no tendency to disprove that Raine was the prior appropriator and owner of the water, which, by tearing out the dams, he allowed to flow to his ranch; nor that he was not entitled to a right of way for the conveying of this water along the natural channel or ditch through the Ennor place; nor was it sufficiently complete in other respects to establish a bar by limitation. If it be claimed that the offer was broad enough to show that the plaintiff had used the water for more than five years in the "same manner" that he used it in 1896, his use and the running of the statute were interrupted by Raine that year, and inferentially every one previous. In order to create a right by prescription, the claimant's use of the water must be uninterrupted, adverse, under claim of right, and with the knowledge of the owner. (*Authors* v. *Bryant*, 22 Nev. 247, 38 Pac. 439.)

If the plaintiff had been allowed to prove all the offer included, that would not have strengthened his case, for these essentials were lacking.

Some decisions hold that an amendment to the answer ought not to be permitted, unless by a defendant acting in a

fiduciary capacity, for the purpose of interposing the statute of limitations, and, if a defendant is to be denied this privilege on or before the trial, and thereby prevented from proving this defense, by analogy and for reasons equally convincing the plaintiff ought not to be favored with this opportunity after the close of the defendant's testimony. There may be extreme cases where the trial court would, in its sound discretion, be justified in making exceptions to this rule.

The judgment of the district court is affirmed, with costs in favor of the respondent.

· BELKNAP, C. J.: I concur.